UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:16-cv-23901-MARTINEZ/GOODMAN

KRISTIAN ZAMBER, on behalf of
himself and all others similarly situated,

    Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

    Defendant.
_____/

**AMERICAN AIRLINES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

American Airlines, Inc. ("American"), respectfully submits this reply in support of its Motion to Dismiss, ECF No. 13. The Complaint must be dismissed with prejudice because (1) Plaintiff lacks standing in that he failed to plead a cognizable injury in fact; (2) Plaintiff's claims relate to the prices and services of an airline and are thus preempted by the Airline Deregulation Act ("ADA"); and (3) Plaintiff's claims fail as a matter of substantive law.

I. **Both of Plaintiff's State-Law Claims are Preempted by the ADA.**[1]

There is no dispute between the parties that the ADA expressly preempts any state "law, regulation, or other provision having the force and effect of law *related to* a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1) (emphasis added). Plaintiff looks to avoid preemption by ignoring the "related to" language and incorrectly arguing that travel insurance is not a "service of an air carrier." Neither approach is correct.

To get around preemption, Plaintiff abandons his "pass through" theory[2] in favor of the argument that American "has no role in the insurance and that it is providing no insurance services." Opp'n Br. at 15. Plaintiff incorrectly believes that if American is not providing insurance and has no role in it, then ADA preemption cannot apply because "the travel insurance at issue here fails to qualify as a service of an airline." *Id.* at 16 (emphasis added). But, it is not

---

[1] Although Plaintiff's lack of standing is a threshold issue for the Court, ADA preemption completely disposes of this case.

[2] Plaintiff has taken incompatible positions. He argues on one hand that American collects travel insurance premium as part of the price charged for air travel (the unsupported "pass-through" theory discussed in Section I, above), Opp'n Br. at 3–4, 7–8, 12–13, ECF No. 18, yet also argues that American has no part in the offering of travel insurance. *Id.* at 2–3, 10–11. Both cannot simultaneously be true. If the Court accepts Plaintiff's "pass-through" theory as true (it is not), Plaintiff's claims are necessarily preempted on their face because selling travel insurance and collecting premium would be an activity that certainly "relates to" American's prices and services. The claims thus would be an improper attempt to regulate these areas. *Bailey v. Rocky Mountain Holdings, LLC*, 136 F. Supp. 3d 1376, 1382 (S.D. Fla. 2015) (claim that can be fairly characterized as directly challenging prices of and payment for airline's services are preempted).

the "service of an airline" language that is dispositive under the ADA, although travel insurance is indeed such a service. Preemption applies to any claim that "<u>relates to</u>" the prices, routes or services of an air carrier.

In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992), the Supreme Court explained that the "key phrase" in understanding the scope of ADA preemption is "relating to." This phrase is afforded a very broad reading:

> The ordinary meaning of these words is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with"—and the words thus express a broad pre-emptive purpose."

*Id*. Thus, any state law claim "***having a connection with or reference to*** airline rates, routes, or services" is preempted under the ADA. *Id.* at 384 (emphasis added, internal quotations omitted). Hundreds of cases have relied on *Morales*'s broad interpretation of the "relating to" language in the ADA. And, the Supreme Court has twice reaffirmed the ADA's "broad preemptive purpose." *See Am. Airlines v. Wolens*, 513 U.S. 219, 228–29 (1995); *Nw. v. Ginsberg*, 134 S. Ct. 1422, 1430 (2015). Plaintiff's argument that the "service" must be directly provided by the air carrier would incorrectly read the key phrase, "relating to," out of the ADA altogether.

Unquestionably, travel insurance <u>relates to</u> American's services and Plaintiff has effectively conceded as much. Mr. Zamber recognizes that American's "services" include, for example, ticketing and baggage handling. *See* Opp'n Br. at 15. It is also undisputed that the travel insurance he purchased compensates him in the event delivery of his checked bags is delayed and also provides for refunds if he cancels his otherwise non-refundable tickets. *See* Compl. at Ex. 5, ECF No. 1-5. Thus, the travel insurance Plaintiff purchased from Allianz clearly has "a connection with or reference to" American's prices (refunds of the ticket price) and its

Shook, Hardy & Bacon L.L.P.
Miami Center, Suite 3200 | 201 S. Biscayne Blvd. | Miami, Florida 33131-4332 | **t** 305.358.5171

802555

services (payment for baggage handling delays). Plaintiff cannot wish away preemption simply by ignoring the fact that travel insurance satisfies the "relating to" language of the ADA.[3]

Even without the "relating to" language of the ADA, Plaintiff's arguments that travel insurance is not a "service" are also flat-out wrong. First, Plaintiff mistakenly posits that if an airline does not <u>directly</u> provide the service then the ADA cannot apply. It matters not for ADA preemption whether a third party provides the service on behalf an airline. *See Huntleigh Corp. v. La. State Board of Private Sec. Examiners*, 906 F. Supp. 357, 362 (M.D. La. 1995) (state law cannot be used to regulate training and registration of airport security officers because "the courts have not strictly limited application of the [ADA] to air-carriers."); *see also, e.g.*, *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 287 n.8 (5th Cir. 2002) (barring tortious interference, fraud, and deceptive trade practice claims because "ADA preemption is not limited to claims brought directly against air carriers"); *Gordon v. Amadeus IT Grp., S.A.*, No. 15-cv-5457, 2016 WL 3676678, at *5 (S.D.N.Y. July 6, 2016); (state consumer protection claims against computer reservation system companies preempted); *Am. Airlines, Inc. v. Travelport Ltd.*, No. 11-cv-244, 2012 WL 12507645, at *2 (N.D. Tex. Feb. 28, 2012) (same); *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1300 (S.D. Fla. 2008) ("consumer protection" regulating travel agencies preempted).

Second, the Department of Transportation is vested with exclusive jurisdiction to regulate services of an airline. The term "services" includes what are known as optional "ancillary

---

[3] Plaintiff argues that *Amerijet Int'l, Inc. v. Miami-Dade Cty.*, 627 F. App'x 744, 749 (11th Cir. 2015) (unpublished), established a binding test for what constitutes a "service" under the ADA. *See* Opp'n Br. at 16. But, whether travel insurance is a service of American (it is) is really not the issue. American offered Mr. Zamber air transportation to his desired destination at an agreed to price and provided, among other services, baggage handling. The proper question in preemption cases is whether travel insurance "relates to" the rates, routes or services provided by an airline. It does precisely because, among other reasons, Plaintiff insured himself for such items.

services" provided by an airline. *See DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 87 (1st Cir. 2011). Thus, if travel insurance is an optional "ancillary service" then any claim relating to it is necessarily preempted. And, the DOT has made clear that travel insurance is just like other ancillary services it regulates. *See* 76 Fed. Reg. 23110-01, at 23144 (Apr. 25, 2011). In recently regulating the manner in which travel insurance offers may be displayed on airline websites, the DOT specifically identified travel insurance as one of many "optional service[s]" of an airline:

> The [DOT] has decided to prohibit the use of opt-out provisions by carriers. . . . We do not agree with airline comments that consumers like having certain airline related services preselected for convenience sake so that they can see the total cost of travel with those services. . . . This rule would prohibit opt-out provisions for any ancillary fee for ***an optional service*** such as seat selection, seat upgrades, pre-boarding, ***travel insurance,*** rental cars, and transfers to and from the airport.

*Id.* (emphasis added). Plaintiff Zamber cites no authority for his argument that travel insurance is not a "service of an airline." Instead, he relies on statements made by American during the DOT's notice and comment period for the above rule. Plaintiff mistakenly states American argued that travel insurance is not a "service." American took no such position. It only urged that regulations were unnecessary for the display of optional services like travel insurance. But, in the end, it is the DOT's position that is dispositive. The DOT made clear that travel insurance is an ancillary airline service subject to its jurisdiction. This means Plaintiff's claims are preempted.[4]

**II.    Plaintiff Lacks Standing.**

On the threshold issue of standing, Plaintiff does not dispute the hornbook law that he must plead facts showing that he has "(1) suffered an injury in fact, (2) that is fairly traceable to

---

[4] Plaintiff's claims also are preempted because they relate to American's prices. The FDUTPA and unjust enrichment claims would effectively require American to disclose its economic relationships with third parties. Even if Florida law required this (it does not), these claims improperly seek to regulate the manner in which American displays and discloses information about prices and surcharges and thus "relate to" airline prices. *See Morales*, 504 U.S. at 391.

-5-
Shook, Hardy & Bacon L.L.P.
Miami Center, Suite 3200 | 201 S. Biscayne Blvd. | Miami, Florida 33131-4332 | t 305.358.5171
802555

the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

But Plaintiff has not alleged an injury in fact. Nor has he alleged any injury traceable to American's conduct. Mr. Zamber's reliance on *Bowe*, *Deere*, *Latman*, and *Turner*—cases all involving mandatory "pass through" charges not present here—is misplaced in light of two critical and undisputable facts: (1) the travel insurance Plaintiff bought from Allianz is optional, not mandatory, and (2) American does not collect any travel insurance premiums from anyone.

In *Bowe v. Public Storage*, a self-storage company required customers to obtain insurance so that customers could fulfill their obligation under the rental agreement. *See* Order on Mot. to Dismiss at 2, *Bowe v. Public Storage*, No. 14-21556-UU (S.D. Fla. Jul. 2, 2014), ECF No. 27, https://ecf.flsd.uscourts.gov/doc1/051113801682. According to the plaintiff, in selling the "over-priced insurance coverage," Public Storage "represent[ed] that the fees Plaintiff paid for this insurance were being transmitted to a third party, the insurance provider." *Id.* at 6. But, "instead of paying these fees to the insurance provider, [Public Storage] retained a portion of these fees." *Id.* There was also evidence that better insurance was available at same or lower prices in the market. *Id.* at 2. While not ruling on standing, the court explained that plaintiff alleged actual damages for charges collected by Public Storage because they were misrepresented to be "passed through Defendant to the insurance provider." *Id.* at 7 (emphasis added). *Bowe* is inapplicable as there is no mandated "pass through" here and American does not collect premiums. Instead, travel insurance is an optional service chosen by a customer[5] who then directly pays the premium to the insurance company. Mr. Zamber suffered no actual damages because he elected to buy

---

[5] Indeed, travel insurance can never be mandated. As shown in Section II, *infra*, the Department of Transportation regulates this service and requires it to be displayed in a manner that allows a traveler to choose whether to purchase it.

insurance, paid the premium directly to the insurance company for the coverage he chose, and does not allege anywhere that a less expensive policy was available in the market.

The same was true in *Deere*. The defendant charged a <u>mandatory</u> "fuel surcharge" and "environmental charge" made to appear as fees being collected by defendant for fuel and environmental costs. *Deere Constr., LLC v. Cemex Constr. Materials of Fla. LLC*¸ No. 15-cv-24375, 2016 WL 4374970, at *2 (S.D. Fla. July 26, 2016). In fact, the fees had no relation to these costs and merely allowed defendant to show lower prices for its services. *Id.* Plaintiff had standing because he paid an inflated price for services based on the deception. *Id.* at *6.

Neither *Latman* nor *Turner* addressed Article III standing and neither applies here. In *Latman v. Costa Cruise Lines, M.V.*, 758 So. 2d 699, 701 (Fla. 2d DCA 2000), a cruise line required passengers to pay "port charges" in addition to the cruise fare. The description of these "port charges" made the plaintiff mistakenly believe the cruise line merely collected the amounts on behalf of the port authorities. *Id.* In reality, it kept a portion of the "port charges" for itself. *Id.* Given those facts, the court found a deceptive practice that harmed the plaintiff. *Id.* at 703.

Similarly, in *Turner Greenberg Assocs. v. Pathman*, 885 So. 2d 1004, 1006 (Fla. 4th DCA 2004), a furniture company affirmatively told the plaintiff that a "freight/insurance" charge "represented the cost to ship the table and that [the defendant] was simply passing through the charge." *Id.* (emphasis added). But, that was untrue. As with the other cases relied on by Plaintiff Zambar, the furniture company actually collected the money and kept part of the fees. *Id.* There, the measure of actual damages was "the difference between the actual costs implied by the term 'freight/insurance' charge and the marked-up amount charged to the [plaintiff]." *Id.* at 1008.

Every case cited by Plaintiff contains an inflated charge that the defendant misrepresented had to be collected on behalf of another. But this is not a case involving such

-7-

"pass through" charges. Here, (i) American did <u>not</u> collect any premium when Mr. Zamber booked his flight (and thus could not misrepresent anything), and (ii) travel insurance was <u>not</u> a mandatory purchase for any traveler; Plaintiff (like every other traveler) independently chooses whether to buy insurance. And, Plaintiff concedes these critical facts. He admits to having purchased <u>optional</u> travel insurance <u>directly from</u> Allianz. Compl. at ¶ 2, ECF No. 1 ("American requires customers who purchase airline tickets on its website to <u>elect</u> whether to purchase a trip insurance policy <u>from an independent insurer</u>.") (emphasis added). Plaintiff also admits that American does <u>not</u> collect any insurance premium when the policy is purchased. *Id.* at ¶ 31 ("the cost of the policy is <u>not</u> included in the customer's bill for the purchased airfare, rather the customer pays the insurance cost separately.") (emphasis added); *see also* Compl. at Ex. 5 (showing total cost of Plaintiff's insurance policy as $24, the amount paid by him to Allianz).[6]

Nor can Plaintiff show he suffered any other type of injury. Glaringly absent from Plaintiff's Complaint is any allegation that (1) he paid more for the travel insurance he purchased from Allianz than was advertised (because he did not); (2) Allianz failed to pay a claim under the travel insurance (which in any event would be a dispute not involving American); (3) he received anything less in coverage than what he bargained for; or (4) he paid more for the insurance than it was worth in the market. Plaintiff does not dispute any of these facts. Instead, he contends that he did not get what he bargained for only because he was unaware American may also receive something from Allianz. Opp'n Br. at 7. But that is entirely beside the point. Mr. Zamber never

---

[6] Recognizing his case does not involve a "pass-through" charge, Plaintiff makes references to "kickbacks" that he speculates American may receive from Allianz as if to suggest improper conduct between them. These inflammatory references are nothing but rank conjecture and not entitled to any presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions . . . will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citations and quotations omitted).

disputes any of the critical facts he must allege to establish standing. His <u>desire</u> to know more about American's business arrangements with third parties simply does not confer standing.

Plaintiff's misconceived grievance is that he is entitled to know the terms of a presumed financial arrangement between American and Allianz. The mere fact that Mr. Zamber did not receive such information, which he is not entitled to obtain, does not constitute an injury in fact. *Spokeo* and its progeny make clear that bare procedural or informational deficits (though none were present here) are not enough to confer standing. *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 320 (5th Cir. 2002) (dismissing plaintiff's claims for lack of standing because she "paid for an effective pain killer, and she received just that—the benefit of her bargain" even though additional warnings could have been provided). It should come as no surprise to Mr. Zamber (or anyone) that there are myriad business arrangements that American has—for items such as WiFi, food services, fueling, and many others—that are not disclosed during the booking process but all of which factor into the prices and services of American.

Plaintiff suggests his damages arise simply because he "parted with money." But, merely paying money for optional travel insurance does not constitute an injury. Plaintiff must allege more and he has not done so. This is particularly true here where there is no allegation that travel insurance is available elsewhere at lower prices. In such cases, there simply is "no way of knowing whether" a defendant's conduct "had the effect of increasing or decreasing prices," and thus there is no cognizable injury in fact. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 200 (3d Cir. 2016); *see also Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362–65 (D.C. Cir. 2012) (plaintiff lacked standing to challenge airline's policy prohibiting ticket resale because plaintiff could only hypothesize that a secondary market would result in lower prices).

There is nothing in the Complaint showing Plaintiff suffered a particularized, concrete injury in fact and certainly no injury is fairly traceable to American. Plaintiff thus lacks standing.

### III.     Plaintiff Has Not Pled an Actionable Claim.

#### A.     *Plaintiff has failed to state a FDUTPA claim.*

To state a FDUTPA claim, "Plaintiff must allege that Defendants engaged in a deceptive act or practice in trade <u>and</u> that Plaintiff is a person 'aggrieved' by the deceptive act or practice." *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348–49 (S.D. Fla. 2009) (emphasis added, citing § 501.211, Fla. Stat.). He has done neither. This case is not about any affirmative deceptive or unfair practice. Rather, it is about a purported omission of information. But, there is nothing deceptive or unfair about American <u>not</u> disclosing the terms of its agreement with Allianz. Plaintiff has not pointed to any authority imposing an obligation on American to divulge the terms of its agreements with third-parties. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012) (dismissing plaintiff's FDUTPA claim based on alleged breach of "an affirmative duty of disclosure" because "the alleged duty of disclosure did not exist under Florida law"); *see also Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005); *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003). Plaintiff instead relies entirely on the inapposite "pass-through" cases discussed in Section I, above, which provide him no support.

Nor has plaintiff shown he was aggrieved. He got exactly what he bargained for—travel insurance—at the price he expected to pay. There is no allegation that travel insurance would have been cheaper had American not provided the information on its website about the availability of travel insurance. *See* § I, above; *Finkelman v. NFL*, 810 F.3d 187, 200 (3d Cir. 2016); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362–65 (D.C. Cir. 2012). The only "injury"

Plaintiff points to is lack of information about any American-Allianz agreement, but that "harm" is not actionable because American had no duty to disclose that information.

### B. Count II fails because Plaintiff conferred no direct benefit on American.

The unjust enrichment claim is similarly defective. Plaintiff wrongly argues—without a single citation—that an unjust enrichment claim can be based on an *indirect* benefit—conferred on American by Allianz or conferred by Plaintiff on Allianz (but not on American). That is not the law in Florida. *See, e.g.*, *Am. Safety Ins. Servs., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) (to recover for unjust enrichment, a plaintiff must show he or she "directly conferred a benefit on the defendant[]"). Here, no direct benefit was conferred on American precisely because Plaintiff contracted solely with Allianz for travel insurance. Nor does equity require the return of any monies paid where Plaintiff received the insurance coverage from Allianz that he bargained for and decided to buy. *E.g.*, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, (S.D. Fla. 2007); *NGL Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672 (Fla. 3d DCA 2000).

### CONCLUSION

For the reasons above and in American's motion, the Complaint must be dismissed.

Dated: January 13th, 2017

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.5171
Facsimile: 305.358.7470

By: /s/ Humberto H. Ocariz
Humberto H. Ocariz
hocariz@shb.com
Florida Bar No.: 740860
Michael A. Holt
mholt@shb.com
Florida Bar No.: 91156

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of January, 2017, a true and correct copy of the foregoing was filed using the Court's CM/ECF system and was served on all counsel or parties of record on the attached Service List by the method indicated.

By: /s/ Michael A. Holt
MICHAEL A. HOLT

## SERVICE LIST

| | |
|---|---|
| Scott B. Cosgrove, Esq. | Humberto H. Ocariz, Esq. |
| scosgrove@leoncosgrove.com | hocariz@shb.com |
| Alec H. Schultz, Esq. | Michael A. Holt, Esq. |
| aschultz@leoncosgrove.com | mholt@shb.com |
| Jeremy Kahn, Esq. | **SHOOK, HARDY & BACON L.L.P.** |
| jkahn@leoncosgrove.com | Miami Center, Suite 3200 |
| LEON COSGROVE LLC | 201 South Biscayne Boulevard |
| 255 Alhambra Circle, Suite 800 | Miami, Florida 33131 |
| Coral Gables, Florida 33134 | Telephone: 305.358.5171 |
| Telephone: 305.740.1975 | Facsimile: 305.358.7470 |
| Facsimile: 305.437.8158 | |
| | (Service via CM/ECF) |
| (Service via CM/ECF) | |
| | *Counsel for American Airlines, Inc.* |
| *Counsel for Plaintiff* | |