UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 16-cv-23901-MARTINEZ/GOODMAN

KRISTIAN ZAMBER, on behalf of himself
and all others similarly situated,

       Plaintiffs,

v.                                        **CLASS ACTION**

AMERICAN AIRLINES, INC.,

       Defendant.

_____/

### AMENDED COMPLAINT

Plaintiff Kristian Zamber ("Plaintiff"), on behalf of himself and all others similarly situated, sues Defendant American Airlines, Inc. ("American") and alleges as follows:

### INTRODUCTION

1.      This is a class action lawsuit filed to redress injuries that Plaintiff and a class of consumers have suffered, and will continue to suffer, as a result of American's deceptive and illegal practices relating to trip insurance sold on its website, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et. seq.*, and state law.

2.      On its website, and throughout the online process of purchasing a flight ticket and trip insurance, Defendant engages in a deceptive scheme to induce its customers to purchase travel insurance policies, while concealing its own financial interest in policy sales.  American leaves the consumer with the false impression that the charge for trip insurance is a pass-through fee, i.e., a fee that is passed on to another entity and for which American has no financial interest. The net impression of American's representations and omissions to consumers is that, when consumers

purchase a trip insurance policy, the funds to cover the policy's cost go to an independent third-party insurance company, whom American identifies as the company brokering the policy for sale to the consumer. Indeed, American identifies this same insurance company as "the licensed producer," or insurance agent, for the trip insurance policies. In reality, and despite lacking a license to solicit, broker or sell insurance policies, American retains or ultimately receives an undisclosed kickback from every policy sold.  American knows it lacks the required license to transact the business of insurance in any state, which is one reason it attempts to hide its role in the travel insurance program through false statements on its website.  Indeed, American's own internal documents admit ██████████████████████████████████ ████████████████ Ex. 1.  However, despite this knowledge, American also admits internally that it ████████████████████████████████ Ex. 2 at 19 (emphasis added).

3.     The Defendant, in order to obtain illegal monetary kickbacks from the sale of travel insurance policies on its website (which it is legally prohibited from receiving), knowingly participates in a racketeering enterprise involving multiple other entities.  This enterprise, comprised of Defendant, AGA Service Company d/b/a Allianz Global Assistance, Jefferson Insurance Company, BCS Insurance Company and additional, unnamed co-conspirators, is engaged in an ongoing pattern of racketeering activity resulting in direct harm to Plaintiff and the proposed class.

4.     American's participation in this racketeering enterprise is knowing and willful, evidenced by a written agreement that it possesses with other members of the enterprise.  Indeed, each participant in the enterprise has acknowledged its participation through a written agreement.

5.      All of these activities have harmed Plaintiff and the proposed class of consumers, as Plaintiff and each member of the proposed class have suffered an out of pocket loss through the payment of undisclosed and illegal commission kickbacks.

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff Kristian Zamber is an individual who is domiciled in, and is a citizen of, Florida. Plaintiff brings this action pursuant to 18 U.S.C. § 1964 to obtain injunctive relief and to recover damages, including treble damages, attorney's fees and costs of suit arising from Defendant's violations of the RICO statute, 18 U.S.C. § 1962, as well as violations of state law.

7.      Defendant American is a Delaware corporation with its principal place of business in Texas. It does business regularly throughout the United States, including in Florida. American also maintains a registered agent in Florida.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States. Additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is an action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than at least one Defendant.

9.      This Court has personal jurisdiction over Defendant because the causes of action asserted herein arise from (i) American operating, conducting, engaging in, or carrying on a business or business venture in this state and (ii) American committing a tortious act within this state. This Court further has personal jurisdiction over American based on American's consent and waiver by establishing a registered agent in Florida for the purpose of receiving service of process. This Court also has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965 because Defendant resides, is found, has an agent, or transacts its affairs in this judicial district. Moreover,

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

American purposefully availed itself of Florida's consumer market through the advertisement, promotion, and sale of trip insurance policies in Florida.

10.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because American resides in this district for purposes of the statute as American is subject to the personal jurisdiction of this Court for purposes of this action. Moreover, a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is also proper in this Court pursuant to 18 U.S.C. § 1965 because Defendant resides, is found, has an agent, or transacts its affairs in this judicial district and the ends of justice require that other parties residing in any other district be brought before the court.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11.    In addition to operating flights nationwide, American operates hundreds of daily flights to and from fifteen different airports in Florida. As part of its business, American sells tickets to consumers through its website, www.aa.com.

12.    When a consumer visits American's website, the site allows the consumer to select his or her preferred destination and travel dates.

13.    Upon the consumer's selection of his or her specific flights, American's website provides the consumer with the price to purchase the selected flights.

14.    Before the consumer completes his or her purchase, American's website requires the consumer to make an election regarding purchasing a trip insurance policy with a third-party insurance provider.  There is no way to purchase a ticket on American's website without being directed to make an election regarding trip insurance.  American claims to force this election on consumers in order to "protect" the consumer in the event his or her travel plans change.

15.     American deceptively markets the third-party trip insurance to its consumers in a uniform fashion—each consumer sees the same deceptive marketing language when purchasing a ticket.

16.     Before selecting a payment method, American's website tells consumers that they may purchase a trip insurance policy on the website if they pay with a credit card. Specifically, American states: "Enjoy greater peace of mind with travel insurance from Allianz Global Assistance. Currently, Trip Insurance is only available for purchase with your airline ticket prior to the day of departure, by U.S. residents who pay for travel with American Express, Diners Club, Discover, MasterCard, or VISA. If you are a U.S. resident and were unable to purchase trip insurance at this time, you may still be able to purchase it by contacting Allianz Global Assistance directly at 1-800-628-5404."

17.     Once a consumer elects to purchase a ticket with either an American Express, Diners Club, Discover, MasterCard or VISA credit card, American requires the consumer to affirmatively select, prior to the completion of the ticket purchase, whether the consumer would like to purchase a trip insurance policy. *See* Exhibit 3. Featured prominently at the top of this selection page is a graphic stating "Allianz Global Assistance."

18.     Consumers are required to make an insurance election, as they are unable to proceed with purchasing their airline tickets on American's website until they choose whether to purchase a trip insurance policy. The consumer cannot simply ignore the insurance offering and move on to purchasing a ticket.

19.     As the consumer faces this mandatory choice, American's website proceeds to aggressively market the trip insurance policies. A consumer must check either a "yes" or "no" box before American allows the consumer to complete the ticket purchase. The "yes" option is

highlighted in bold type and placed above the box for "no," which does not appear in bold type. *See id*.

20.     In the "yes" section where a consumer can purchase an insurance policy, American places a checkmark in bright green typeface, followed immediately thereafter by the word "Recommended," also in bright green typeface. *See id*.

21.     Following the bright green checkmark and "Recommended" line, American includes a quote from U.S. News & World Report, Oct. 2015, which reads: "It's a smart idea to consider investing in travel insurance." *Id*. This is intended to create the impression that the trip insurance is in the consumer's best interest—while hiding the fact that American is pushing the product because it is in American's financial interest to generate sales. In other words, the consumer is deceived into believing that American is acting in the consumer's best financial interest, and not its own.

22.     Underneath that section, without any bold-faced type, is an option for the consumer to select "no" to the purchase of trip insurance, where American says the following: "No, I understand by declining coverage I am responsible for all cancellation fees and expenses." *Id*.

23.     After the section that portrays the trip insurance policies as something in the consumer's best financial interest, American proceeds to conceal its financial motivation in pushing the product by disclaiming its role in the trip insurance policies being sold on its website.

24.     Specifically, American represents that a third party is providing the insurance, not American itself. American states: "This insurance is offered by a third party, Allianz Global Assistance, ***not American Airlines***. Plans underwritten by Jefferson Insurance Company or BCS Insurance Company. Recommended by AGA Service Company, ***the licensed producer*** and administrator of this plan." *See id*. (emphasis added).

LEÓN COSGROVE, LLP

255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

25.     American thus represents to the consumer that it is not the offeror, underwriter, administrator, or licensed producer of the trip insurance, but this representation is categorically false.  Indeed, American's own internal documents ***admit that this is a lie***, as they admit that ████████████████████████████████████████████ Ex. 2 at 19 (emphasis added).

26.     A "producer" is insurance parlance for an insurance agent or broker, i.e., the one who makes a commission on the sale of insurance. Thus, by stating that AGA Service Company is "the" producer, American represents that it is not acting as an agent or broker, i.e., it is not making a commission on sales of trip insurance policies.  However, that is plainly not the case. American's own internal documents admit that it receives ███████████ Ex. 4 (emphasis added).

27.     Indeed, despite making trip insurance policies available to consumers on its website, American does not hold itself out as the seller (either as the insurer or as a "middleman" such as an insurance agent) of the trip insurance.

28.     In fact, American cannot sell insurance to the consumer (and thus cannot receive commissions on sales) because it is not licensed as an insurer or insurance agent in Florida or anywhere else.  Defendant knows this: ██████████████████████████████ ██████████████ Ex. 5.  Yet despite this knowledge, American does exactly what it knows it cannot do. Ex. 6 ████████████████████████████████████ ████████████████████████████████████████████████ ██████ *. See also* Ex. 7 ████████████████████████████████

29.     Florida prohibits the unlicensed transacting of insurance business, including the solicitation, sale or brokerage of insurance, and the receipt of commissions by people or entities without a license. *See* Fla. Stat. § 624.401 and 626.112(1), (7), and (8). A violation of this

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

prohibition is a felony. *Id.* § 624.401 and 626.112(9).

30.     Like Florida, other states across the country also prohibit the unlicensed solicitation, sale or brokerage of insurance, including the receipt of commissions by people or entities without a license. For example, the New York Office of General Counsel has issued an official opinion that an insurer may not pay any commission to transportation companies for the sale of travel insurance unless the transportation company is a licensed and appointed insurance agent or broker. *See* Exhibit 8, N.Y. General Counsel Opinion No. 4-23-2008 ("May an insurer pay an insurance commission to a cruise line or tour operator that is not a licensed and appointed insurance agent, or a licensed insurance broker? . . . No. An insurer may not pay an insurance commission to a cruise line or tour operator that is not either a licensed and appointed insurance agent, or a licensed insurance broker.").

31.     Because American disclaims that it is selling insurance, and because payment to an unlicensed insurance agent (such as American) is a felony, consumers are left with the net impression that American is a financially disinterested party that is promoting trip insurance with the consumer's best interest at heart.

32.     This marketing is intended to create the impression that the trip insurance is in the consumer's best interest—while hiding the fact that American is pushing the product because it is in its financial interest to generate sales. In other words, the consumer is deceived into believing that American is acting in the consumer's best financial interest, and not its own.

33.     Throughout the online process of purchasing a flight ticket and trip insurance, American leaves the consumer with the false impression that the charge for trip insurance is a pass-through fee, i.e., a fee that is passed on to another entity and for which American has no financial interest. The net impression of American's representations and omissions to consumers is that,

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

when consumers purchase a trip insurance policy, the funds to cover the policy's cost go to an independent third-party insurance company, whom American falsely identifies as the company brokering the policy for sale to the consumer. Indeed, American identifies this same insurance company as "the licensed producer," or insurance agent, for the trip insurance policies. In reality, and despite lacking a license to broker insurance policies, American retains or ultimately receives an undisclosed kickback from every policy sold and acts as the broker for all trip insurance policies sold on its website.

34.     Under these common facts, a reasonable consumer would not understand that American is receiving or retaining any payment based on the consumer's purchase of a trip insurance policy; just the opposite is true, as reasonable consumers believe that their purchase of trip insurance would not include payment to unlicensed brokers (e.g., American)—especially where another entity is represented to be "the licensed producer."

35.     For example, American includes in green text the word "Recommended" next to the "Yes" option, and then represents to the consumer that the party "recommending" the purchase of insurance is AGA Service Company, not American. This representation to Plaintiff and all consumers is false and deliberately hides American's financial interest in the purchase of trip insurance policies.  American is also recommending trip insurance policies to its consumers in order to generate illegal kickbacks for itself, and its false statements are designed to induce more consumers to purchase insurance policies, with the belief that all of their premium is passed to the actual insurer.

36.     Further enhancing the illusion that the trip insurance is a pass-through charge is the presentation of the invoice. When a consumer buys a trip insurance policy on American's website, the cost of the policy is not included in the consumer's bill for the purchased airfare. Rather the

consumer's insurance cost is itemized separately even though the airfare and trip insurance cost are paid via a one-time credit card charge on American's website. In contrast, when a consumer elects to purchase from American a trip "add on," such as a more desirable seat, the cost of that "add on" is included in the fare price. The lack of inclusion of the trip insurance cost in the consumer's airfare purchase price further indicates to the consumer that American treats the insurance cost as a pass-through charge, not as a profit vehicle for itself. This is another false representation made to all consumers, deceiving them into believing the third-party insurer receives all of their premium.

37.     Additionally, if a consumer seeks to have questions answered about the insurance offered on American's website, American's website leads the consumer to believe that American has no involvement in the insurance sold. For example, in a portion of American's website titled "Trip insurance," American refers to the insurance policies as "Allianz Global Assistance trip insurance for U.S. residents." Exhibit 9 at 1. Immediately after that description, American's website lists the "Top reasons to buy trip insurance." *Id*. It then includes a section titled "Satisfaction guarantee," telling consumers they are purchasing a policy "from Allianz Global Assistance." *Id*. at 2 ("When you purchase a plan from Allianz Global Assistance . . . .").

38.     Another section of American's website, labeled "Reservations & tickets FAQ's," also affirmatively disclaims American's role as the seller of the insurance and otherwise implies that American lacks any role in the insurance a consumer purchases on American's website. Specifically, American answers the question of "Will I get a confirmation email?" as follows: "Yes, if you provide your email address then the *trip insurance provider* will email it to you." Exhibit 10 at 9 (emphasis added). American then answers the question of "Why isn't my trip insurance purchase displayed in my itinerary?" with the following: "Trip insurance products are

sold by third-party insurance providers, ***not American***, so you'll receive a separate confirmation. All policy documentation will be sent directly to you from the insurance provider." *Id.* at 10 (emphasis added).

39.     These statements to the consumer, especially American's representation that it is not a seller of the trip insurance, are false and reinforce the impression of the trip insurance premium as a pass-through charge—one where American has no role in the provision of the product nor any profit interest.  Again, American ***admits*** that it ███████████████████ ███████████████ Ex. 2 at 18 (emphasis added).

40.     American's representation that it is not a seller of the trip insurance is an affirmative misrepresentation because American's actual role in the sale of the trip insurance policies is analogous (if not identical) to that of an insurance agent, who solicits insurance sales and receives commissions on policies sold. In addition to the insurer itself, an insurance agent is also a "seller" of insurance policies.

41.     Even alone, but especially in combination with American's representation that another entity is "the licensed producer" of the policies, this representation necessarily informs the consumer that American does not receive a commission or otherwise profit from the sale of trip insurance.  The truth is otherwise.  *See id.*

42.     After a consumer elects to purchase a trip insurance policy and proceeds to complete the purchase of an accompanying airfare, Allianz, not American, sends the consumer an email containing a copy of the purchased insurance policy. *See* Exhibit 11. Nowhere in that communication or accompanying insurance policy is there any reference to American receiving or retaining any payment in connection with the purchased insurance. *See* Exhibit 12. Instead, the

"Letter of Confirmation" that the consumer receives containing the insurance policy has "Jefferson Insurance Company" as the header.

43.     The net impression made to American's consumers on its website and during the online purchase process—including, but not limited to, American's denials that it is the seller or offeror of the insurance policies it is making available on its website, American's statement that the insurance is purchased from Allianz, American's indication that another entity is "the" producer for the insurance (and by implication, American is not), and the setting out the cost of a policy as a separate charge to the consumer—is that the cost of the trip insurance policies is a pass-through charge, where American simply collects the money for the insurance policy from the consumer and forwards it on to the actual insurance provider, without any profit interest in the charge.  In reality, these are all affirmative misrepresentations to Plaintiff and all consumers.

44.     This net impression is furthered by the fact that state laws generally prohibit the unlicensed sale of insurance, including receipt of commissions on sales of insurance.

45.     It is thus reasonable for consumers to expect that American is not receiving a commission or any other remuneration from any sales of insurance.  In reality, American receives a stunning ███████████████████████████████████████████████ ████████████████████████     *See also* Ex. 4 (American receives ████████████████) (emphasis added).

46.     The trip insurance is a hidden profit center for American, generating well over ██████ ████████ in undisclosed profits during the class period.

47.     American, instead of disclosing its profit interest in the trip insurance policies sold on its website, disguises its financial interest by lying to Plaintiff and all consumers, leaving them with the impression that the cost of an insurance policy is a "pass through" charge.  Indeed,

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

American affirmatively tells consumers that insurance policies and charges are not included with their itineraries because it is a third party's product, all without any suggestion or indication that American is retaining or ultimately receiving a portion of this charge for itself. This is in contrast to other charges that American offers on its website, such as more desirable seats and early boarding rights, where American bundles the cost of these optional fees into the overall price of a consumer's ticket, thereby signaling to the consumer American's profit interest.

48.     The trip insurance program on American's website represents an unlawful kickback scheme—one in which American hides, and affirmatively misleads consumers about, its role and profit interest in the insurance policies sold on its website.

49.     Indeed, the deceptive and misleading nature of American's travel insurance program with Allianz is also demonstrated through its pricing mechanism, which prices a policy based upon a simple percentage of the consumer's airline ticket price.  Upon information and belief, this percentage has historically been approximately 6.5%.

50.     This pricing mechanism for a consumer's travel insurance policy perfectly reveals the inherent illegality of the entire travel insurance program.  The actual insurance underwriters for the insurance policies, which Plaintiff believes to be Jefferson Insurance Company and BCS Insurance Company, do not perform any underwriting on the individual customer level.  Instead, policies are ***automatically issued*** to consumers when American collects their credit card payment for the insurance premium on its website.  As a result, there is no correlation whatsoever between the actual insurance risk that is being underwritten and the policy cost.  This allows American to make unconscionable kickback profits, as it earns greater revenues from insurance simply by having higher ticket prices.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

51.     For example, two American customers could be traveling on the exact same American flight, having paid dramatically different prices for a trip insurance policy purchased on Defendant's website.  If one customer paid $400 for her ticket, under Defendant's pricing scheme, the approximate insurance policy cost would be $26 ($400 ticket price times 0.065).  However, if another traveler bought her ticket for the same flight for $600, she would have paid $39 for her travel insurance policy ($600 ticket price times 0.065).

52.     Therefore, American and the members of this illegal enterprise are not charging any stated filed rate for these insurance policies, rather they are using a simple formula tied to ticket price that is wholly unrelated to the actual risks being underwritten.  In fact, members of the racketeering enterprise submit false filings to the various state regulators that 1) hide American's role in receiving unlicensed commission kickbacks; and 2) misstate how consumers are charged for these travel insurance policies.  This results in consumers paying prices for insurance policies that are higher than they would be absent the Defendant's misconduct.

53.     To facilitate this kickback scheme, and its inherent illegality, American routes insurance premium payments through its website at the point of sale for airline tickets.  Consumers input their credit card information on American's website, then through the use of interstate wires, those consumer insurance funds are then routed to Allianz.  Then Allianz, through a series of interstate wires, transfers back to American the per policy commission payments disguised as "marketing" or "advertising" fees.   The enterprise engages in this deception in order to hide from consumers and state regulators the fact that American is receiving illegal insurance kickback payments.

54.     Additionally, the enterprise members engage in additional acts of fraud directed at Plaintiff and all class members through ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

55.     The price for the trip insurance sold on American's website is not set by American.

56.     American provides no services to the consumer in connection with the sale of trip insurance on its website, despite its receipt of illegal kickbacks.

57.     No contractual relationship is formed between the consumer and American in connection with a consumer's purchase of trip insurance on American's website.

58.     No bargained-for exchange takes place between the consumer and American in connection with a consumer's purchase of trip insurance on American's website.

59.     On March 20, 2016, Plaintiff purchased a trip insurance policy on American's website. Plaintiff received an email from the insurance provider attaching his policy, neither of which referenced American. *See* Exs. 11 and 12.

60.     American has never disclosed to Plaintiff, or any of the class members, the true nature of its relationship with Allianz, Jefferson Insurance Company, or BCS Insurance Company. Specifically, American has not disclosed the fact that it retains or receives a substantial kickback or commission on the policies made available on its website.  Instead, it engages in a pattern of false statements to hide this fact.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

**Class Definition**

62.    Plaintiff seeks to represent the following class:

All persons in the United States who purchased a trip insurance policy on American's website within the applicable limitations period (the "Class Period").

Excluded from this class are American, its affiliates, subsidiaries, agents, board members, directors, officers, and employees. Also excluded from the class are the district judge and magistrate judge assigned to this case, their staff, and their immediate family members.

63.    This class action is brought pursuant to Rule 23(b)(2) because American has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class appropriate.

64.    This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Plaintiff's claim and the class members' claims predominate over any question of law or fact affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

65.    American has subjected Plaintiff and the members of the class to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is American's standard business practice.

**A.    Numerosity**

66.    The individual class members are so numerous that joinder of all members in a single action is impracticable. American operates thousands of flights a day, and upon information and belief, it has sold hundreds of thousands of trip insurance policies during the Class Period.

67.    While Plaintiff estimates the proposed class numbers in the hundreds of thousands, the exact number of class members, as well as the class members' names and addresses, can be identified from American and Allianz's business records.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

**B.      Commonality/Predominance**

68.      Common questions of law and fact exist as to Plaintiff's and the class members' claims.  These common questions predominate over any questions solely affecting individual class members, including, but not limited to, the following:

      a.   Whether American violated 18 U.S.C. § 1962(c) or (d);

      b.   Whether American violated Fla. Stat. § 772.101, et. seq.;

      c.   Whether American engaged in a deceptive and unfair business practice by misleading the class about its financial interest in making available trip insurance policies and its receipt or retention of a kickback;

      d.   Whether the representations made about insurance premiums collected by American would lead the reasonable consumer to believe it was a pass-through charge;

      e.   Whether American receives undisclosed kickbacks, commissions, or fees from the sale of trip insurance;

      f.   Whether American manipulated the class through trip insurance products in order to maximize its own profits at the expense of the class;

      g.   Whether American retains or receives a commission or kickback for the sale of trip insurance policies and is transacting insurance without a license;

      h.   Whether and to what extent American's conduct has caused injury to the Plaintiff and the class members;  and

      i.   Whether American unlawfully enriched itself at the expense of the class.

**C.   Typicality**

69.      Plaintiff's claims are typical of the putative class members' claims because of the similarity, uniformity, and common purpose of American's unlawful conduct. Plaintiff, like all

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

class members, was damaged through his payment of money that American deceptively presented as a pass-through charge to the insurance company, when in fact American enriched itself in this process.

70.     Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of American's wrongful and deceptive conduct.

**D.     Adequacy**

71.     Plaintiff will fairly and adequately protect and represent the interest of each member of the class because he has suffered the same wrongs as the class members.

72.     Plaintiff is fully cognizant of his responsibilities as class representative and has retained León Cosgrove, LLP to prosecute this case. León Cosgrove, LLP is experienced in complex class action litigation, including litigation related to violations of the Racketeer Influenced and Corrupt Organizations Act and unfair and deceptive trade practices, and has the financial and legal resources to meet the costs of and understand the legal issues associated with this type of litigation.

73.     Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

**E.     The Prerequisites of Rule 23(b)(2) Are Satisfied.**

74.     The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) exist as American has acted or refused to act

on grounds generally applicable to the class, thereby making appropriate final injunctive and equitable relief with respect to the class as a whole.

75.     American's actions are generally applicable to the class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the class as a whole.

**F.      The Prerequisites of Rule 23(b)(3) Are Satisfied.**

76.     The questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy.

77.     The likelihood that individual members of the class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

78.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class. Plaintiff knows of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

79.     Plaintiff re-alleges paragraphs 1 through 78 as if fully set forth herein and further alleges the following.

80.     This count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

81.     At all times material, Plaintiff and all members of the class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

82.     At all times material, American conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

83.     American has engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices alleged above.

84.     The misrepresentations and deceptions, and concealment and omissions of material facts, alleged in the preceding paragraphs occurred in connection with American's trade and commerce in Florida.

85.     American's unfair and deceptive acts and practices violate FDUTPA, Sections 501.201 and 501.211, Fla. Stat.

86.     As a direct and proximate result of American's FDUTPA violations, Plaintiff and the class have been damaged in an amount to be proven at trial. Plaintiff and the class have a monetary, out of pocket loss, as they paid money to American as a result of its deceptive conduct.

87.     Plaintiff and the class are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under FDUTPA.

**COUNT II**
**UNJUST ENRICHMENT**

88.     Plaintiff re-alleges paragraphs 1 through 78 as if fully set forth herein and further alleges the following.

89.     This is a count for unjust enrichment.

90.     Plaintiff and each member of the class conferred a direct benefit on American through their payment for trip insurance, allowing American to enrich itself to the detriment of the class.

91.     American appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of its insurance kickback scheme.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

92.     Under the circumstances, it would be unjust and inequitable to allow American to retain this benefit, as it was obtained through deceptive representations.

93.     Independently, it would also be unjust and inequitable to allow American to retain this benefit because American is not legally entitled to receive commissions for sales of trip insurance in the first place because it does not have a license to broker insurance.

94.     Plaintiff and the class suffered damages as a result of American's unjust enrichment.

**COUNT III**
**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1962(C)**

95.     Plaintiff re-alleges paragraphs 1 through 78 as if fully set forth herein and further alleges the following.

96.     This is a count for violations of the Racketeer Influenced and Corrupt Organizations provisions of the Organized Crime Control Act of 1970 (RICO), 18 U.S.C. § 1961 *et seq.*

97.     At all relevant times, Defendant American conducted and participated in the affairs of an enterprise through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mail and wire facilities to execute a scheme to defraud, as well as repeated acts of money laundering, all in violation of RICO, 18 U.S.C. § 1962(c).  The predicate acts of racketeering carried out by the enterprise include the sale of hundreds of thousands of travel insurance policies to the class through fraudulent representations on Defendant's website, hundreds of thousands of invoices sent through the mail and wire facilities, the receipt of illegal kickbacks through use of the mail and wire facilities, the submission of false documentation through the mail and wire facilities, and the illegal laundering of monetary instruments.  The scheme to defraud had the express purpose of allowing American to obtain from its consumers

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

monies to which it has no legal entitlement, namely portions of consumers' insurance premiums, by lying to consumers about Defendant's role in and relationship to the travel insurance products sold on its website.

98.     The RICO enterprise which American engaged in, and the activities of which affected interstate and foreign commerce, is comprised of Defendant, Allianz Global Assistance ("Allianz"), BCS Insurance Company ("BCS"), Jefferson Insurance Company ("Jefferson"), and other unnamed co-conspirators.  Each member of the enterprise has a written agreement with Allianz setting forth its role and participation in the enterprise.  These contracts form the structure of the enterprise.

99.     The enterprise and its activities are ongoing, and its common purpose is to enrich the Defendant at the expense of the class members.  The enterprise acted to deceive and hide from the class members the fact that Allianz was paying an undisclosed and illegal kickback to American when each class member purchased a travel insurance policy.

100.    The enterprise has functioned for over four years as a continuing unit and has maintained an ascertainable structure separate and distinct from the pattern of racketeering activity.

101.    American conducted and participated in the affairs of the RICO enterprise through a pattern of racketeering activity that consisted of numerous and repeated violations of federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. § 1341 and § 1343. Defendant further participated in the enterprise by engaging in the laundering of monetary instruments in violation of 18 U.S.C. § 1956. This conduct and these predicate acts, with the resultant harm to Plaintiff and class members, continues on a daily basis, establishing a long-term

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

threat of racketeering activity and evidencing the continuity of Defendant's open-ended pattern of racketeering activity.

102.    The scheme to defraud included deceiving Plaintiff and class members into believing that when they purchased a travel insurance policy on Defendant's website, the price displayed represented the cost of the policy.  In reality, the insurance premium price includes a large kickback to American.  American effectuated this scheme through a host of affirmative misrepresentations to Plaintiff and all class members, along with material omissions.  Defendant had a duty to not materially mislead its customers but failed to do so in order to increase its profits from the sale of insurance policies to class members.  In addition to its affirmative misstatements, American's omissions were material, as they increased the cost of Plaintiff and Class Members' insurance premiums.  Plaintiff and the class are not paying insurance premiums predicated upon the underwritten risk, rather they are paying higher, inflated prices to cover an illegal kickback that Allianz pays to American.

103.    The scheme to defraud was executed through multiple false statements on American's website, as noted *supra*, all designed with the express purpose of inducing consumers to purchase travel insurance policies by falsely representing American's role in the sale of policies.

104.    In addition to American's use of the wires to deceptively market and sell the travel insurance product, Allianz sent class members insurance policies through mail and wire facilities, all of which were in furtherance of the enterprise's scheme, as none of them disclosed the payment of illegal kickbacks.

105.    Moreover, Allianz utilized the federal wire and mail facilities to make payments of illegal kickbacks to American.  Therefore, Allianz has committed tens of thousands of distinct violations of 18 U.S.C. § 1341 and § 1343 during the class period.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

106.    American and Allianz separately engaged in multiple acts of money laundering in violation of 18 U.S.C. § 1956.  The federal anti-money laundering statute prohibits, among other things, an entity from engaging in financial transactions, knowing that the proceeds of those transactions derive from illegal activity, with the intent of promoting unlawful activity.  That is exactly what American and other members of the enterprise do here.  As stated, American lacks a license to conduct the business of insurance, and as such it is prohibited from receiving payments tied to sales of travel insurance policies.  Defendant knows that it 1) lacks a license; and 2) cannot receive commission or kickback payments as a result.  To enable itself to receive kickbacks while hiding the true nature of the payments it is receiving, American and Allianz violate 18 U.S.C. § 1956.  Specifically, American collects customer payment information on its website.  Then, through American's agreement with Allianz, consumers' insurance payments are sent first to Allianz, which then, through a series of interstate wires, transfers back to American the per policy commission payments disguised as "marketing" or "advertising" fees. In reality, the payments are illegal kickbacks, and both Allianz and American know this, but they hide the true nature of the transaction in order to allow American to receive commission payments that it is legally prohibited from receiving.

107.    Each of these violations was related because they shared the common purpose of defrauding class members by failing to disclose the payment of illegal kickbacks of class member insurance premiums.  These related criminal acts had the same or similar purpose, results, participants, victims, and methods of commission, and are otherwise related by distinguishing characteristics which are not isolated events.

108.    Finally, Allianz, BCS and Jefferson committed additional acts of mail and wire fraud by submitting fraudulent documents to state regulators, all of which were designed to hide

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

the operation of the RICO enterprise. Specifically, all of these entities submitted regulatory filings that failed to disclose the illegal payment of commissions to American. These submissions also failed to note that American does not possess the required license to transact the business of insurance in any state.

109.    Allianz, BCS, and Jefferson are insurance companies regulated by respective state entities.

110.    One aspect of this regulation is that insurers and other related entities, including Allianz, BCS, and Jefferson, are required to provide the states certain information regarding the use of a brokering agent and the payment of commissions.

111.    American's role in the sale of trip insurance policies on its website is materially equivalent to that of an insurance agent or broker.

112.    American submits business for trip insurance risks to Allianz, BCS, and Jefferson.

113.    In exchange, it is paid a commission or kickback for each trip insurance policy sold through its website.

114.    To hide these payments, Allianz, BCS, and Jefferson make material misrepresentations in their reports to and filings with state agencies by failing to disclose the amount of risk they receive from American, who is acting as an insurance agent. Allianz also fails to disclose the kickbacks it pays to this unlicensed agent, as American is not licensed to transact insurance business in any state.

115.    The material misstatements and omissions of Allianz, BCS, and Jefferson allow the kickback scheme described *supra* to continue, to the detriment of Plaintiff and class members.

116.    Collectively, these predicate acts demonstrate that American had the specific intent to participate in the overall RICO enterprise, which was evidenced by its scheme to defraud

Plaintiff and class members.  The scheme was designed to deceive Plaintiff and class members through the implementation and execution of an illegal kickback scheme.  Plaintiff and the class members relied on the uniform false statements and omissions from American and the enterprise co-conspirators—that the full customer premium went to the cost of the travel insurance policy-- to their detriment.  Indeed, the entire slate of false statements American and its enterprise co-conspirators made to Plaintiff were designed to mislead anyone from believing that American had any financial interest in Plaintiff's trip insurance transaction.  American sought to hide its enormous profit interest because disclosing it could decrease insurance sales (and American profits), as consumers would be less likely to purchase a policy knowing ███████████ ████████████████ as a kickback.  *See* Ex. 4.

117.    American used and invested the income it received through its pattern of racketeering activity to operate its business, which caused direct damage to Plaintiff and class members.

118.    As a result of American's participation in the racketeering activity set forth herein, Plaintiff and class members have incurred significant damages.  Plaintiff and class members paid a price for a travel insurance policy that had no relation to the underwritten risk, but rather was inflated to cover the cost of an illegal kickback to American. American did not provide any service to Plaintiff, or anything of value worth ███████████████████████████████ It simply received ██████████████ each customer paid while providing nothing in return.  This results in consumers paying prices for insurance policies that are higher than they would be absent the Defendant's misconduct.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

**COUNT IV**
**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS**
**ACT ("RICO"), 18 U.S.C. § 1962(D)**

119.    Plaintiff re-alleges paragraphs 1 through 78 and 95-118 as if fully set forth herein and further alleges the following.

120.    At all relevant times, American was associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is agreed to conduct and participate, directly and indirectly, in the conduct and affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

121.    Defendant engaged in a scheme to defraud Plaintiff and class members by marketing the travel insurance product through false and deceptive statements, while hiding the payment of illegal kickbacks, wherein the Defendant received a substantial portion of Plaintiff and class members' insurance premiums, without any legal entitlement.

122.    Defendant committed, or caused to be committed, a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the payment and receipt of illegal kickbacks and the related acts set forth above.

123.    As a result of Defendant's violations of 18 U.S.C. § 1962(d), Plaintiff and the class members suffered direct damages as set forth above.

**COUNT V**
**VIOLATION OF FLORIDA'S CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT,**
**FLA. STAT.  §§ 772.103, 772.104(1), 777.011, and 777.03(1)(a)**

124.    Plaintiff re-alleges paragraphs 1 through 78 and 95-118 as if fully set forth herein and further alleges the following.

125.    As described above, American, Allianz, Jefferson Insurance Company and BCS Insurance Company were associated in an enterprise and conspired, aided and abetted and agreed

27

to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of Fla. Stat. §§ 772.103, 772.104(1), 777.011, and 777.03(1)(a).

126.    In furtherance of the scheme, American engaged in thousands of acts of wire fraud as alleged above for more than six years in violation of federal law, as set forth above, and Fla. Stat. § 817.034.  American violated and conspired to violate, and aided and abetted others in the violation of, Fla. Stat. § 624.401, which states among other things that "[n]o person shall act an insurer, and no insurer or its agents, attorneys, subscribers, or representatives shall directly or indirectly transact insurance, in this state except as authorized by a subsisting certificate of authority issued to the insurer . . ."

127.    American violated and conspired to violate and aided and abetted others in the violation of Fla. Stat. § 624.401 through solicitation of consumers on its website booking path and its receipt of illegal insurance kickbacks.  Defendant, an admittedly unlicensed entity, entered into an agreement with Allianz and its remaining enterprise co-conspirators to illegally solicit and broker travel insurance policies through its website booking path.  In exchange for commissions on sales, which it is not legally permitted to receive, American solicits insurance sales and partners with Allianz to sell policies on its website booking path, while concealing from consumers its financial interest in policy sales.  In its internal documents American admits this, noting it █████ ████████████████████████████████ Ex. 2 at 18 (emphasis added).  American also admits it receives ████████████ Ex. 4.  Defendant affirmatively misled Plaintiff and all members of the proposed class through false statements and materials omissions as set forth above, and it proceeded use the wires ███████████████████████████████ ██████████ in order to facilitate the kickback scheme.

128.     Additionally, American and its enterprise co-conspirators have engaged in hundreds of illegal financial transactions in violation of Fla. Stat. § 896.101 to facilitate the kickback scheme.  Knowing it cannot receive any of Plaintiff or any consumer's insurance premium without appropriate licensing, American proceeded to agree with Allianz to have consumers' insurance payments sent first to Allianz, which then, through use of the wires, transfers back to American the per policy commission payments disguised as "marketing" or "advertising" fees.

129.     Based upon this conduct, American has engaged in a pattern of racketeering activity and engaged in more than two incidents of racketeering or racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission, and that are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

130.     By American's own admission, it has been operating this trip insurance program with Allianz continuously for more than six years.  Thus, Plaintiff has demonstrated the continuity of American's conduct over a fixed period of time.  Furthermore, Defendant continues to engage in these predicate acts and harm the Class members on a daily basis, which establishes a threat of long-term racketeering activity and evidences the continuity of American's open-ended pattern of racketeering activity.

131.     Moreover, American used and invested the income it received through its pattern of racketeering activity to operate its business, which caused the Plaintiff and the Class members to suffer direct damages.  The investment of the kickbacks obtained by American through the sale of travel insurance policies in Florida to the Plaintiff and the Class members enabled Defendant to perpetuate the operation of the enterprise and to continue to defraud the Plaintiff and the Class members.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

132.    By reason, and as a result thereof, American's conduct and participation in the racketeering activity described herein directly caused Plaintiff and the Class members to incur significant and substantial damages.  As described herein, Plaintiff paid a ███████████ (*see, e.g.*, Ex. 4) to American without his knowledge or consent and without receiving any services in return, and American's racketeering conduct dramatically inflated the price of Plaintiff's insurance well-above its actual cost and value.

**PRAYER FOR RELIEF**

Named Plaintiff and the plaintiff class request the following relief:

a.   Certification of the class;

b.   A jury trial and judgment against American;

c.   An order requiring American to make full disclosure to consumers of its receipt or retention of trip insurance premiums sold on its website and the amount of the kickback it retains or receives;

d.   The costs of suit, including reasonable attorneys' fees, in accordance with RICO, FDUTPA and the Florida RICO Act;

e.   Compensatory and treble damages, attorneys' fees, and costs under the federal RICO statute and the Florida RICO Act;

f.   Compensatory damages in an amount to be determined at trial, punitive damages, cost of suit, including reasonable attorneys' fees, in accordance with the RICO statutes;

g.   General, actual and compensatory damages in an amount to be determined at trial;

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR.  |  SUITE 800  |  CORAL GABLES, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

h.   Restitution of the amount American was unjustly enriched as a result of the wrongs alleged herein, in an amount to be determined at trial;

i.   Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

j.   Such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: June 28, 2019                          Respectfully submitted,

*/s/ Alec H. Schultz*
Scott B. Cosgrove
  Fla. Bar No. 161365
Alec H. Schultz
  Fla. Bar No. 35022
John R. Byrne
  Fla. Bar No. 126294
Jeremy L. Kahn
  Fla. Bar No. 105277
LEÓN COSGROVE, LLP
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Tel:     305.740.1975
Email: scosgrove@leoncosgrove.com
Email: aschultz@leoncosgrove.com
Email: jbyrne@leoncosgrove.com
Email: jkahn@leoncosgrove.com

*Counsel for Zamber and the Class*

31

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 28, 2019, I electronically served the foregoing on all counsel of record listed below.

Humberto H. Ocariz, Esq.
SHOOK, HARDY & BACON L.L.P.
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 358-5171
Fax: (305) 358-7470
Email: hocariz@shb.com

*Counsel for Defendant American Airlines, Inc.*

James E. Brandt, Esq.
Elizabeth (Betsy) Marks, Esq.
LATHAM & WATKINS, LLP
885 Third Avenue
New York, New York 10022-4834
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: james.brandt@lw.com
Email: betsy.marks@lw.com

*Counsel for Defendant American Airlines, Inc.*

/s/ Alec H. Schultz
Alec H. Schultz

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM