**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

Case No.: 1:16-CV-23901-MARTINEZ/GOODMAN

KRISTIAN ZAMBER, on behalf of
himself and all others similarly situated,

      Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

      Defendant.

_____

**AMERICAN AIRLINES, INC.'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I.      Background .............................................................................................................2

      A.      Pursuant to a Marketing Agreement, Allianz Markets and Sells its Trip Insurance Products on American's Website ..................................................2

      B.      The Content Of Allianz's Trip Insurance Box has Varied over Time and by Customer over the Class Period..................................................3

      C.      Allianz is Responsible for Licensing and Regulatory Compliance ........................4

      D.      American's Customers Purchase Trip Insurance for a Variety of Reasons............4

      E.      The Origin of this Lawsuit ...............................................................................5

II.     LEGAL STANDARD..........................................................................................7

III.    ARGUMENT .......................................................................................................7

      A.      Plaintiff Waived the Right to Bring a Class Action...............................................7

      B.      The Proposed Class is Not Adequately Defined Nor Clearly Ascertainable ..........8

              1.      Plaintiff's Class Definitions are Overly Broad ...........................................8

              2.      Ascertaining the Class Members Would Be Administratively Difficult..............................................................................................9

      C.      Plaintiff Has Not Established the Requirements of Rule 23(a) ............................10

              1.      Plaintiff Is Not an Adequate Class Representative ...................................10

              2.      The Claims and Defenses are Not Typical of those of the Class................12

              3.      Plaintiff Fails to Identify Common Questions of Fact or Law .................13

      D.      Plaintiff Has Not Established the Requirements of Rule 23(b) ............................14

              1.      Plaintiff Fails to Show that Common Questions Predominate .................14

                      a.      RICO ..............................................................................14

                      b.      FDUTPA .........................................................................17

                      c.      Unjust Enrichment .........................................................19

                      d.      Florida Civil Remedies For Criminal Practices Act ....................19

               2.      Plaintiff Fails To Show That A Class Action Is Superior.........................20

CONCLUSION....................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Bocciolone v. Solowsky*,
    2009 U.S. Dist. LEXIS 34296 (S.D. Fla. 2009)......................................................14

*Bouton v. Ocean Prop. Ltd.*,
    322 F.R.D. 683 (S.D. Fla. 2017)..............................................................................9

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)................................................................................................14

*Brown v. Electrolux Home Prod., Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ..............................................................................15

*Buell v. Direct Gen. Ins. Inc.*,
    267 F. App'x 907 (11th Cir. 2008) .........................................................................19

*Carriuolo v. GM Co.*,
    823 F.3d 977 (11th Cir. 2016) ................................................................................17

*Coleman v. Commonwealth Land Title Ins. Co.*,
    318 F.R.D. 275 (E.D. Pa. 2016)..............................................................................15

*Comcast Corp., v. Behrend*,
    569 U.S. 27 (2013)..................................................................................................19

*Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*,
    No. 15-24375-CIV-ALTONAGA, 2016 WL 8542540 (S.D. Fla. Dec. 1, 2016) ..................17

*Dolan v. JetBlue Airways Corp.*,
    No. 18-62193-CIV, 2019 WL 2443527 (S.D. Fla. May 28, 2019).........................13

*Dolphin LLC v. WCI Communities, Inc.*,
    715 F.3d 1243 (11th Cir. 2013) ..............................................................................17

*Donoff v. Delta Air Lines, Inc.*,
    18-81258 (S.D. Fla. July 9, 2019)....................................................................13, 19

*Dungan v. The Acad. at Ivy Ridge*,
    No. 06-CV-0908, 2008 WL 2827713 (N.D.N.Y. July 21, 2008) ............................15

*Eller v. Equitable Trust Life Ins. Co.*,
    778 F.3d 1089 (9th Cir. 2015) ................................................................................15

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................................................8

*Green v. McNeil Nutritionals, LLC*,
    No. 2004-0379-CA, 2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005)....................19

*Hammett v. Am. Bankers Ins. Co.*,
    203 F.R.D. 690 (S.D. Fla. 2001) ...........................................................................14

*Irwin v. Celebrity Cruises, Inc.*,
    2013 U.S. Dist. LEXIS 47370 (E.D. Pa. Apr. 2, 2013) ...........................................8

*Jones v. Childers*,
    18 F.3d 899 (11th Cir. 1994) ................................................................................20

*Karhu v. Vital Pharm*,
    621 F. App'x 945 (11th Cir. 2015) ..........................................................................9

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ..............................................................................12

*Klay v. Humana*,
    382 F.3d 1241 (11th Cir. 2004) ............................................................................15

*Lankford v. Carnival Corp.*,
    2014 U.S. Dist. LEXIS 192138 (S.D. Fla. July 25, 2014) ........................................8

*Latman v. Costa Cruise Lines, N.V.*,
    758 So. 2d 699 (Fla. DCA 2000) ...........................................................................18

*Little v. T-Mobile USA, Inc.*,
    691 F.3d 1302 (11th Cir. 2002) ..............................................................................7

*London v. Wal-Mart Stores, Inc.*,
    340 F.3d 1246 (11th Cir. 2003) ............................................................................10

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*,
    No. MC 15-1825 (ESH), 2019 WL 3021245 (D.D.C. July 10, 2019)....................15

*Molina v. Aurora Loan Servs., LLC*,
    635 F. App'x 618 (11th Cir. 2015) ........................................................................12

*Montgomery v. New Piper Aircraft, Inc.*,
    209 F.R.D. 221 (S.D. Fla. 2001) ...........................................................................18

*Morris v. ADT Sec. Servs., Inc.*,
    No. 07-80950-CIV, 2009 WL 10691165 (S.D. Fla. Sept. 11, 2009) ......................18

iii

*O'Neill v. Home Depot U.S.A., Inc.*,
   243 F.R.D. 469 (S.D. Fla. 2006) ................................................................................. *passim*

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*,
   No. 3:12-CV-1366-HES-JBT, 2016 WL 7666179 (M.D. Fla. May 12, 2016) ...................... 17

*Pendergast v. Sprint Nextel Corp.*,
   691 F.3d 1224 (11th Cir. 2012) .......................................................................................... 8

*Pipes v. American Sec. Ins. Co.*,
   169 F.R.D. 382 (N.D. Ala. 1996) ...................................................................................... 15

*Pop's Pancakes, Inc. v. NuCO2, Inc*.,
   251 F.R.D. 677 (S.D. Fla. 2008) ...................................................................................... 18

*Poulos v. Caesars World, Inc*.,
   379 F.3d 654 (9th Cir. 2004) ........................................................................................... 16

*Price v. United Servs. Auto. Ass'n*,
   No. 10-2152, 2012 WL 2847821 (W.D. Ark. Mar. 16, 2012) ............................................ 11

*Randolph v. J.M. Smucker Co.*,
   303 F.R.D. 679 (S.D. Fla. 2014) ............................................................................. 7, 9, 10

*Ray v. Spirit Airlines, Inc.*,
   836 F.3d 1340 (11th Cir. 2016) ........................................................................................ 12

*Shiring v. Tier Techs., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007) ...................................................................................... 11

*Sikes v. Teleline, Inc.*,
   281 F.3d 1350 (11th Cir. 2002) ........................................................................................ 15

*Ulysse v. Waster Mgmt. Inc*.,
   No. 11-CV-80723, 2013 WL 11327137 (S.D. Fla. Sept. 13, 2013) ................................... 20

*Valley Drug Co. v. Geneva Pharm., Inc.*,
   350 F.3d 1181. (11th Cir. 2003) ......................................................................................... 7

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) .................................................................................... 7, 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................... 7, 13

*Williams v. Nat'l Travel Servs., Inc.*,
   No. 07-60257-CIV-UNGARO, 2007 WL 9710723 (S.D. Fla. Dec. 11, 2007) ....................... 9

iv

# STATUTES

18 U.S.C. § 1956 .......................................................................................................................17

18 U.S.C. § 1956(a)(1) ............................................................................................................17

18 U.S.C. § 1956(a)(2)(B) .......................................................................................................17

Fla. Stat. § 624.401 .................................................................................................................20

Fla. Stat. § 624.401(1) ............................................................................................................16

Fla. Stat. § 626.112 .................................................................................................................20

Fla. Stat. § 626.141 .................................................................................................................17

Fla. Stat. § 896.101 .................................................................................................................20

Fla. Stat. § 896.101(3)(a)-(c) ..................................................................................................20

N.C. Gen. Stat. § 58-33-10(18) ...............................................................................................13

# RULES

Fed. R. Civ. P. 23(a) .......................................................................................................2, 7, 10

Fed. R. Civ. P. 23(a)(2) ...........................................................................................................13

Fed. R. Civ. P. 23(a)(3) ...........................................................................................................12

Fed. R. Civ. P. 23(b) ............................................................................................................7, 14

Fed. R. Civ. P. 23(b)(3) ........................................................................................................7, 14

**INTRODUCTION**

Plaintiff's motion for class certification is, like his complaint, totally disconnected from the facts established through discovery. That discovery has thoroughly discredited Plaintiff's claim that American is engaged in some multi-million dollar, "pass through" racketeering scheme predicated on a campaign to deceive customers and regulators about whether it receives compensation from Allianz, which offers and sells trip insurance on American's website: Plaintiff now concedes that he paid no money to American, entered into no contract with American, and purchased trip insurance only from Allianz, at a price set entirely by Allianz. He also felt "misled" only after an attorney contacted him. He even continued to purchase trip insurance from Allianz on American's website after the attorney informed him that American received compensation. Although his own experience contradicts the sharp allegations of his complaint, he nonetheless seeks class certification and to be appointed class representative.

Far from imposing a pass through charge, American simply received marketing fees from Allianz, through a separate contract to which Plaintiff was not a party, for letting Allianz market and sell its trip insurance products on the valuable virtual real estate of American's website. That is unexceptional, and Plaintiff himself admitted it would have made no sense if American had not been compensated by Allianz. Survey research shows that the vast majority of consumers understand (or do not care) that American is compensated by Allianz—rebutting Plaintiff's claims of deception and fraud. And despite Plaintiff's attempts to depose (or subpoena documents from) state regulators from Tallahassee to Juneau, no regulator has taken action against American for violating insurance laws. Plaintiff cannot identify a single other person who feels harmed by American's actions. For those and many other reasons, Plaintiff's legal claims fail as a matter of law and no class should be certified in this case.[1]

Nonetheless, Plaintiff seeks class certification without any of the evidence on which a plaintiff would typically rely to support it: expert evidence. Plaintiff did not retain any experts. There is no expert survey research (or other evidence) to prove the existence of a misrepresentation, to show its materiality to putative class members, to advance a damages theory susceptible to generalized proof, to analyze market price data showing whether or to what

---

[1] This Court should resolve American's pending motion to dismiss before deciding this motion. There is no reason to consider whether deficient claims should be certified. Moreover, if this Court agrees that Plaintiff's RICO claim fails, Plaintiff's plea for a nationwide class would be irrelevant.

extent the price of class members' trip insurance is inflated, or to explain each state's insurance regulations or what conduct violates them.  Instead, Plaintiff just asks this Court to trust that his counsel's arguments and generalized proof will prove his claims.  Plaintiff cannot sustain his substantial burden on this basis.  Indeed, his motion for class certification fails for many reasons.

First, Plaintiff waived the right to bring a class action by agreeing to the terms and conditions of American's frequent flier program.  Those terms and conditions provide that in exchange for the benefits of American AAdvantage membership, members will not bring class actions based on their interactions with AA.com.  Plaintiff has already conceded that he clicked his agreement to those terms and conditions.  That alone is sufficient to deny Plaintiff's motion.

Second, Plaintiff's putative class is overbroad and not ascertainable.  He includes in his class individuals without regard to whether they were misled, or even whether they bought or bore financial responsibility for the trip insurance purchase.  Moreover, Plaintiff offers no administratively feasible mechanism to separate those who belong inside or outside the class.

Third, Plaintiff fails to meet the requirements of Fed. R. Civ. P. 23(a).  This is a lawyer-driven case with no injured consumers.  Plaintiff did not believe that American deceived him until convinced by an attorney; he has little familiarity with the complaint or any supposed injury to class members; he made no effort to investigate his factual claims or to consider other counsel; and his testimony contradicted the legal theories espoused in his complaint.  As such, he is not an adequate representative with claims typical of the class, and is subject to atypical defenses.

Finally, Plaintiff fails his "demanding" burden to show that common issues predominate with respect to any of his legal claims.  Putative class members were exposed to over ███ specific offers over the class period, many without the purportedly deceptive language on which Plaintiff's case principally turns.  Individual issues of causation, reliance, and equity dominate many of Plaintiff's claims; others would require state-by-state inquiries foreclosing common proof.  Plaintiff's motion for class certification should be denied with prejudice.

## I.  BACKGROUND

### A.  Pursuant to a Marketing Agreement, Allianz Markets and Sells its Trip Insurance Products on American's Website

Allianz markets and sells trip insurance to American's customers through a trip insurance "box" in the booking path of American's website—the series of webpages that customers click

through to book airline tickets online.  *See* DE 199-1 (Gustafson Decl. at ¶ 4)[2].  The "box" informs customers of the availability, price, and features of the offered trip insurance.  Allianz controls the content and formatting of the trip insurance offer presented to American's consumers.  American does not offer or sell these trip insurance products—Allianz does.  *See* DE 199-1 (Gustafson Decl. at ¶ 3); Ex. 1 (Gustafson Dep. Tr. 24:3-25:23); Ex. 2 (Worsham Dep. Tr. 17:18-18:5).  Allianz determines what insurance product to offer, at what price, and what services and benefits to include.  DE 296 (AC ¶¶ 55-56).  Consumers who buy trip insurance on AA.com contract only with Allianz.  *Id.* at ¶¶ 57-58.

American does not control the terms of trip insurance offered by Allianz to American's customers.  DE 199-2 (Horowitz Decl. at ¶ 4).  It does not set the price for trip insurance.  DE 296 (AC ¶ 55).  It enters into no contractual relationship in connection with customers' trip insurance purchase.  *Id.* at ¶¶ 56-57.  And it does not collect or handle customers' payments for trip insurance at all.  *See* DE 199-2 (Horowitz Decl. at ¶¶ 7-8, 10).  Rather, Allianz alone charges the customers' credit cards and collects the funds.  *See* DE 199-3 (Confer Decl. ¶ 2).

In exchange for the right to market and sell its trip insurance products on the valuable virtual real estate of American's website, American receives compensation from Allianz.  *See* DE 199-1 (Gustafson Decl. at ¶ 11); *see also* Ex. 2 (Worsham Dep. Tr. 157:17-158:9).[3]

### B.   The Content Of Allianz's Trip Insurance Box has Varied over Time and by Customer over the Class Period

Since September 2012, there have been over ████ specific trip insurance offers advertised by Allianz to American's customers on American's website.  *See* Ex. 3 (Atayev Decl. ¶ 2).  At any given time, as many as ████ different offers could have been displayed to U.S. customers.  *Id.* at ¶ 4.  Allianz varies message content, appearance, and benefits for different customer segments, based on their destination, airfare, dates of travel, and so on.  *Id.* Importantly, many of the formulations advertised during the class period do not include the

---

[2] Unredacted versions of Exhibits to DE 199 are filed under seal in DE 201.

[3] Plaintiff makes much of documents in which certain American employees refer to "selling" trip insurance or receiving "commissions."  In many cases, American used that vocabulary because it was introduced by an Allianz representative.  *See* Ex. 2 (Worsham Dep. Tr. 106:4-21).  Regardless, it is neither surprising, nor relevant, that employees who are neither legal, nor insurance, experts sometimes use inexact vocabulary to describe American's marketing fee.  Indeed, the judges in the parallel cases have dismissed claims based on alleged receipt of commissions by the airlines.

purportedly deceptive language on which Plaintiff's claims rely.  For instance, although Plaintiff principally argues that consumers were misled into thinking that American receives no compensation from Allianz as a result of language (accurately) identifying AGA Service Company as "the licensed producer" of the plan, *see* DE 296 (AC ¶¶ 24, 26), many offers seen by putative class members did not include that language, Ex. 3 (Atayev Decl. ¶ 3).

### C. Allianz is Responsible for Licensing and Regulatory Compliance

Under American and Allianz's Marketing Agreement, ███████████████████
█████████████████████████  *See* DE 325-3.  The applicable licensing and registration requirements vary by state, and have changed over time.  Ex. 4 (Henson Decl. at ¶ 9). Allianz holds appropriate licenses in all 50 states, including Florida, to transact insurance.  *Id.* at ¶ 4.  Allianz never told American that it needed to be licensed in any state.  American never believed it needed a license since it does not offer or sell trip insurance.  DE 199-1 (Gustafson Decl. at ¶ 23).  Neither any state insurance regulator nor Allianz has ever advised American that it is violating any state insurance law with regard to the trip insurance offered by Allianz on AA.com.  *See* DE 199-1 (Gustafson Decl. at ¶¶ 21-23); Ex. 2 (Worsham Dep. Tr. 109:1-12).

### D. American's Customers Purchase Trip Insurance for a Variety of Reasons

American's customers obtain trip insurance for a variety of reasons and in a variety of circumstances.  Many customers purchase trip insurance for business travel; others for leisure travel.  Ex. 5 (Butler Decl., Ex. 1, NERA-000025).  Some customers bear the cost of trip insurance themselves; others are reimbursed by an employer.  Some purchase trip insurance for themselves; others purchase trip insurance for a co-worker, relative, or other third party.

Even though the content of the trip insurance box is directed by Allianz, Plaintiff alleges that *American* misleads consumers into believing that American is not compensated for its role in permitting Allianz to market and sell trip insurance on American's website.  DE 311 (Mot. at 1). Consumer survey research, however, rebuts those allegations, indicating that only ███ of respondents exposed to the language on which Plaintiff relies believe that American Airlines does not receive compensation in connection with trip insurance.  Ex. 5 (Butler Decl., Ex. 1, NERA-000028-29).  The █████████████ believed either that American *is* compensated or that there is not enough information to determine whether it did.  *Id.* at NERA-000029.  The █████████████ also agreed either that they knew American was compensated or that whether American was compensated would not impact their purchasing decision.  *Id.*

4

Plaintiff's own experience is consistent with those results.  Plaintiff purchased the trip insurance plan at issue on March 20, 2016 from Allianz through AA.com.  *See* DE 296 (AC ¶ 59).  He did not make any claims under the policy.  *See* Ex. 6 (Zamber Dep. Tr. 137:19-22). Plaintiff believes that Allianz honored its contract with him.  *Id*. at 24:2-5.  He admits that when he purchased the trip insurance, he "wasn't really thinking" about whether Allianz compensated American, and indeed "wasn't thinking about that particular relationship [between Allianz and American]" at all.  *Id*. at 81:23-25, 82:10-12.  He does not know whether he even *read* the supposedly deceptive statement upon which his current legal theory largely turns (that AGA is "the licensed producer"), and could not testify either way as to whether it was even on the website when he bought trip insurance.  *Id*. at 91:1-15.  He also admits that it "makes sense that American should get to charge Allianz something for allowing it to advertise on [American's] website."  *Id*. at 82:18-21.  He likewise does not assert that his purchase of trip insurance affords him "the right to control what Allianz did with the money [he] paid."  *Id*. at 57:22-25.

### E.    The Origin of this Lawsuit

John Bosco, a former Leon Cosgrove attorney, is a friend and former colleague of Plaintiff.  *Id*. at 41:13-24.  On July 23, 2016, he sent Plaintiff a message over LinkedIn explaining that his firm was "working on a new case with the airline industry and I need to identify some Florida residents who have purchased a flight on-line and bought the optional trip insurance."  Ex. B of App. in Support re Response/Objection at App.0006, *Zamber v. American Airlines, Inc*., No. 19-23459, (S.D. Fla. Aug. 6, 2019), DE 8-1.  Plaintiff responded.  *Id*. at App.0007.  Before Bosco contacted him, Plaintiff had not felt deceived by American regarding trip insurance.  Ex. 6 (Zamber Dep. Tr. 50:6-17).  It was only after speaking to Bosco that Plaintiff "developed" the view that he had been deceived.  *Id.* at 50:10-17, 52:2-5.

A few weeks later, on August 18, 2016, Leon Cosgrove sent Plaintiff an engagement letter, which Plaintiff counter-signed on August 28th.  DE 325-2.  Although his counsel seeks to certify him as a nationwide class representative, Plaintiff's engagement letter states ▮▮▮▮▮▮▮▮▮



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id*. at ¶ 3(a) (emphasis added).  The letter also states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id*. at

¶ 3(f).  Before signing the engagement letter, Plaintiff did not negotiate the fee arrangement or consider any other law firms to represent him or the interests of putative class members.  Ex. 6 (Zamber Dep. Tr. 69:16-71:8).  On September 1, 2016, four days after signing the engagement letter and well after he supposedly developed the view that American had deceived him, Plaintiff purchased another trip insurance plan from Allianz through American's website (something that was revealed late in the day even though Plaintiff purchased the policy only days before filing this lawsuit).  *Id*. at 51:7-52:10; DE 199-12 (AGA00024109-130).  He also bought Allianz insurance via Priceline.  Ex. 6 (Zamber Dep. Tr. 94:1-5).

On September 12, 2016, shortly after Plaintiff purchased the second trip insurance plan from Allianz, Leon Cosgrove filed a *nationwide* putative class action on his behalf, asserting FDUTPA and unjust enrichment claims.  DE 1.  Plaintiff never met with anyone at Leon Cosgrove in person; only a few calls preceded filing the complaint.  Ex. 6 (Zamber Dep. Tr. 72:22-25; 73:15-22).  Plaintiff did not comment on the draft complaint.  *Id*. at 74:5-15.  At his deposition, Plaintiff could not answer how a sample Allianz trip insurance offer (Ex. 1 to the complaint), differed from what he saw in March 2016.  *Id*. at 87:12-90:18.  Nor could he identify any false or misleading statements in that trip insurance box, even though his legal claims are founded on the opposite premise.  *Id*. at 125:25-132:18.  Plaintiff does not know what "FDUTPA" means.  *Id*. at 18:17-24.  He does not even know whether he would be a good class representative, and he has no idea who would be in the putative class.  *Id*. at 106:15-20, 116:21-24, 117:23-122:14.  He does not remember the last time he looked at AA.com.  *Id*. at 30:21-23.

In June 2019, Leon Cosgrove filed an Amended Complaint, adding new causes of action for civil RICO violations under federal and Florida law.  DE 296 (AC).  Plaintiff seeks damages in an amount equivalent to what Allianz allegedly paid American for that plan as a "kickback."  Ex. 6 (Zamber Dep. Tr. 153:18-154:4).  Plaintiff has undertaken no analysis comparing his plan's cost with other comparable policies available in the market.  *Id*. at 79:3-81:6.  Although he alleges that he overpaid for his trip insurance, DE 296 (AC ¶ 52, 102, 118, 132), Plaintiff has no evidence—let alone expert evidence—that he could have acquired a comparable trip insurance plan directly from Allianz or a third party that would have been less expensive than the plan he acquired via AA.com.  *See* Ex. 6 (Zamber Dep. Tr. 78:1-81:6).

## II.     LEGAL STANDARD

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'"  *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2002)).  A plaintiff must next establish four elements set forth by Fed. R. Civ. P. 23(a):  (1) numerosity, (b) commonality, (3) typicality, and (4) adequacy of the class representative and class counsel.  Finally, for claims for money damages, a plaintiff must show "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

Plaintiff bears the burden to demonstrate that each of the four requirements of Rule 23(a) and at least one of the requirements of 23(b) are met.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Randolph*, 303 F.R.D. at 684.  This Court must conduct a "rigorous analysis [of] the prerequisites of Rule 23", which frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim," as "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Dukes*, 564 U.S. at 350-51.  The Court should consider the factual record in deciding whether the requirements of Rule 23 are satisfied.  *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 n.15. (11th Cir. 2003).

## III.     ARGUMENT

### A.     Plaintiff Waived the Right to Bring a Class Action

Plaintiff's motion for class certification fails at the outset, because Plaintiff agreed when logging into his AAdvantage account to book his award travel and trip insurance that he would not bring "*any class action lawsuits* related to his access to, dealings with, or use of the American Airlines website."  DE 95 (Answer ¶ 88) (emphasis added).  Plaintiff admitted earlier in this case that he "clicked … agreement to … the AAdvantage terms and conditions."  DE 126 (Opp. to Mot. to Transfer Venue at 12).  Those terms and conditions expressly provide that "[b]y accessing your AAdvantage account on aa.com, you agree to the aa.com site usage policy."  *See See* DE 117-1 (Blaise-Shamai Decl. ¶ 3).  That hyperlinked policy, in turn, provides that "You agree and understand that you will not bring against … American Airlines, or any of its affiliated entities … any class action lawsuit related to your access to, dealings with, or use of the Site."

*Id.* (Blaise-Shamai Decl. Ex. A).  Because this action plainly arises from Plaintiff's access to, dealings with, or use of AA.com, he cannot bring a class action.

Courts routinely enforce class action waivers in similar circumstances.  *See Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224 (11th Cir. 2012) (enforcing class action waiver set forth in terms and conditions of user's cell phone agreement); *Lankford v. Carnival Corp.*, 2014 U.S. Dist. LEXIS 192138 (S.D. Fla. July 25, 2014) (enforcing class action waiver to which passengers must agree before being able to register for travel).  A plaintiff "need not actually have read the terms" for the waiver to be enforceable.  *Lankford*, 2014 U.S. Dist. LEXIS 192138, at *18-19; *see also Irwin v. Celebrity Cruises, Inc.*, 2013 U.S. Dist. LEXIS 47370, at *9 (E.D. Pa. Apr. 2, 2013) (citation omitted).  When a party is "informed of the consequences of his assenting click and [is] shown, immediately below, where to click to understand those consequences," the terms are binding.  *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012).

**B.      The Proposed Class is Not Adequately Defined Nor Clearly Ascertainable**

Plaintiff's motion to certify a class also fails on the merits.  Plaintiff seeks to certify two classes:  "[a]ll persons nationwide" (for his federal RICO claims) and "[a]ll Florida persons" (for his state law claims) "who purchased a trip insurance policy on American's website within the limitations period."  DE 311 (Mot. at 1).  These definitions are overly broad.  Even if they could be narrowed, it would be administratively infeasible to determine who should be in those classes.

**1.      Plaintiff's Class Definitions are Overly Broad**

A class definition must not be "overly broad in relation to the issues [plaintiff] raises" and "[a] vague class definition portends significant manageability problems for the court." *O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006) (citation omitted). Even though Plaintiff's claims turn on purportedly deceptive language in Allianz's offer boxes, Plaintiff's class definition makes no effort to limit the class to individuals who even saw the allegedly offensive language.  Moreover, Plaintiff's RICO and FDUTPA claims contain a causation element; and his unjust enrichment claim requires the alleged enrichment to have been unjust.  Any class thus must be restricted to those harmed by American's alleged racketeering (for RICO), or who suffered injuries *caused* by the alleged misrepresentations on AA.com (for FDUTPA and unjust enrichment).  Yet Plaintiff's class definitions extend far more broadly.

To begin with, Plaintiff's definition includes all trip insurance "purchasers" of from Allianz via AA.com, even if they (i) assumed (or did not care) that American *was* compensated

8

by Allianz; or (ii) their purchase was not caused by the trip insurance "box" because they decided to purchase trip insurance before visiting AA.com.  The definition also includes those who may not be financially responsible for the trip insurance (or received reimbursement from their employers) and sophisticated buyers (like frequent travelers or corporate purchasers), many of whom test the market in order to identify and purchase the cheapest trip insurance products. And it even includes those who do no purchase via American's booking path, but upon a later return to AA.com.  Such purchasers cannot and should not form part of any class.

Finally, even if one presumed that Plaintiff's class included those who would not have purchased trip insurance but for some deceptive conduct by American, Plaintiff makes no exception for such individuals who financially benefited from their insurance, as by filing claims under the policy.  Such individuals could not have been harmed by any language that allegedly induced them to purchase trip insurance; their inclusion in Plaintiff's proposed class is therefore improper.  *See O'Neill*, 243 F.R.D. at 477 (rejecting overly broad class definition of all "customers who purchased damage waivers" during the class period, because it included customers who may have benefited from the damages waiver, who understood they could decline the charge, or who understood the scope of coverage); *see also Williams v. Nat'l Travel Servs., Inc.*, No. 07-60257-CIV-UNGARO, 2007 WL 9710723, at *3 (S.D. Fla. Dec. 11, 2007) (class overbroad because it included vacation package purchasers who knew of allegedly deceptive timeshare meeting attendance requirement before purchasing and thus were not deceived).

Here, Plaintiff's class definitions are similarly overly broad because they include customers who assumed that American received compensation from Allianz or who purchased trip insurance for reasons unrelated to the language on American's website.

### 2. Ascertaining the Class Members Would Be Administratively Difficult

Determining who should be in a proposed class "should be 'administratively feasible,' meaning that the identification of class members should be 'a manageable process that does not require much, if any, individual inquiries.'"  *Randolph*, 303 F.R.D. at 685 (internal citation omitted).  "[A] plaintiff cannot satisfy the ascertainability requirement by proposing that class members self-identify (such as through affidavits) without first establishing that self-identification is administratively feasible and not otherwise problematic."  *Karhu v. Vital Pharm*, 621 F. App'x 945, 948 (11th Cir. 2015).  Ascertainability of the class must be clearly based on "objective criteria."  *Bouton v. Ocean Prop. Ltd.*, 322 F.R.D. 683, 692 (S.D. Fla. 2017).

9

Plaintiff's class is not ascertainable even if Plaintiff narrows his class definitions.  First, although trip insurance is routinely purchased in relation to business travel, there is no mechanism available (aside from self-identification) by which a putative class member could establish whether she bore ultimate financial responsibility or received reimbursement for her purchase.  Second, it would be infeasible to determine whether a particular putative class member was misled by the text of Allianz's offer boxes.  Different putative class members were exposed to over ███ specific formulations, many without the language about which Plaintiff principally complains.  And there is no means—aside from self-identification—by which this Court could separate out putative class members who did not form the opinion that American received no compensation (and therefore were not misled) from those who purportedly did. Other courts have rejected class certification for that reason.  *See Randolph*, 303 F.R.D. at 687, 689; *O'Neill*, 243 F.R.D. at 478.  This Court should do likewise.

### C.   Plaintiff Has Not Established the Requirements of Rule 23(a)

#### 1.   Plaintiff Is Not an Adequate Class Representative

Plaintiff fails to carry his burden of demonstrating that he is adequate to represent the putative class because discovery has confirmed that this is a lawyer-manufactured litigation and that Plaintiff is not pursuing his claims against American in his own interest or the interest of any purported class.  *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003).

This case arises not from any injury suffered by Plaintiff, but from a campaign by Plaintiff's counsel, Leon Cosgrove, to recruit their friends and family members to sue the airline industry for selling advertising space on their websites.[4]  John Bosco, a Leon Cosgrove attorney solicited Plaintiff, his friend and former colleague, via LinkedIn in July 2016.[5]  Ex. 6 (Zamber Dep. Tr. 40:22-42:6).  Plaintiff testified that he did not feel deceived by American's website until *after* Leon Cosgrove shared its legal theories with him.  *Id.* at 50:10-17, 52:2-5.  In such cases, where it is self-evident that lawyers, rather than plaintiffs, are directing the litigation, courts have

---

[4] Leon Cosgrove also solicited a plaintiff who had previously worked with the firm on another case to sue JetBlue, and the mother of an associate to sue Delta.  Leon Cosgrove is involved in lawsuits against United as well.  Each case involves similar claims.

[5] American has subpoenaed Mr. Bosco, who possesses relevant information with respect to Plaintiff's adequacy as a class representative.  Ex. 1 to App. in Support re Mot. to Quash, *Zamber*, No. 19-23459, DE 2-1.  American reserves the right to supplement its response with information obtained from Mr. Bosco's eventual deposition.

found the proposed class representatives to be inadequate.  *See, e.g.*, *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D. Va. 2007) (plaintiff was inadequate where he "elected to pursue litigation only after responding to a press release distributed by the [plaintiff's counsel] and even then based only on [plaintiff's counsel's] investigation and research").

Plaintiff's engagement letter evidences that "Plaintiff is simply lending [his name] to a suit controlled" by the attorney.  *Price v. United Servs. Auto. Ass'n*, No. 10-2152, 2012 WL 2847821, at *8 (W.D. Ark. Mar. 16, 2012).  The letter *discouraged* him from investigating his claim, telling him he has ████████ to do so and urging him to ████████████████████ ████████████ DE 325-2 (Engagement Letter ¶ 3(f)).  And Leon Cosgrove seeks to certify Plaintiff as a nationwide class representative even though ████████████████ ████████████████████—showing that Plaintiff's attorneys are acting without oversight, and in their own interests, rather than those of Plaintiff or the class.  *Id*. at ¶ 3(a)

Further confirming that Plaintiff is inadequate, Plaintiff's deposition confirmed that he had little familiarity with his complaint's allegations—indeed, he was not familiar with AA.com at all, despite attaching screen shots to his complaint.  And his testimony flatly contradicted the theories of deception embodied therein.  He admitted that he was not thinking about American's relationship with Allianz when purchasing trip insurance, and agreed it would make "no" sense that "American would allow Allianz to advertise on its website for free."  Ex. 6 (Zamber Dep. Tr. 82:5-21).  Although he claims that American's website is deceptive, he could not identify anything deceptive on its booking path.  *Id*. at 125:25-132:18.  Nor could he identify anything that American could do to eliminate that deception.  *Id*. at 124:10-23.  And although his lawyers allege that he paid an inflated price for his trip insurance, Plaintiff could not identify any investigation that he had done now or then to determine whether he actually paid a higher price for trip insurance as a result of purchasing it on American's website.  *Id*. at 78:1-81:6.  Indeed, Plaintiff has no idea what class he represents or whether he would be a good class representative. *Id*. at 106:15-20.  He even purchased another trip insurance policy from Allianz through AA.com just *11 days* before filing this lawsuit—a purchase he supposedly forgot about until confronted about it at his deposition.  Of course, the fact that Plaintiff remains an American customer and continues to purchase trip insurance from Allianz on AA.com despite knowing American receives compensation obliterates his claims of deception and fraud.  *Id*. at 51:7-53:2.

11

Plaintiff's testimony exposes that he is simply lending his name to this litigation, and is "unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987). Several district courts "[] have properly denied class certification" on these grounds. *Id.*

**2.      The Claims and Defenses are Not Typical of those of the Class**

Plaintiff also cannot satisfy Rule 23(a)(3), because discovery established that his claims will be subject to unique defenses. *See O'Neill*, 243 F.R.D. at 478-80. Specifically, Plaintiff will not be able to establish causation for his RICO and FDUTPA claims. When asked at deposition why he purchased the trip insurance plan at issue, Plaintiff did not identify anything on AA.com that caused him to purchase it. Ex. 6 (Zamber Dep. Tr. 136:23-137:18). He did not even remember whether he read the supposed misstatement at the heart of his legal claims. *Id.* at 91:1-15. He could not explain why American had deceived him into purchasing trip insurance on this occasion, when he had flown on many American flights and never bought trip insurance before. *Id.* at 95:19-97:7. Or why he continued to purchase trip insurance from Allianz through AA.com even after he knew that American was compensated by Allianz. *Id.* at 51:7-53:2.

Plaintiff's claims are thus subject to unique defenses. Whether American was receiving compensation from Allianz was neither material to his decision to purchase travel insurance, nor caused him damages; he admitted that, on reflection, it was reasonable for American to charge Allianz an advertising fee for selling its products on American's website, *Id.* at 81:9-82:21, and that his contractual relationship with Allianz did not afford him "the right to control what Allianz did with the money [he] paid." *Id.* at 57:22-25. He could not even say he believed his trip insurance would have been less expensive if American had received no compensation. *Id.* at 158:23-159:14. And Plaintiff could identify nothing on American website that caused Plaintiff's alleged damages. *Id.* at 77:2-12. That consideration is fatal to his RICO and FDUTPA claims. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349-50 (11th Cir. 2016) (plaintiff's failure to allege "a direct link" between an airline's conduct and the plaintiff's "decision to purchase tickets" fatal to RICO claim); *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (affirming dismissal of FDUTPA claim where plaintiff failed to allege that "but for the quoted statement on [the] website[], she would not have applied for" the loan modification). Likewise, American could not have been unjustly enriched if Plaintiff purchased trip insurance for reasons unrelated to the representations on American's website.

Plaintiff's testimony also evidences that a reasonable consumer would not be deceived into believing that American lacks any financial interest in the sale of trip insurance through AA.com—Plaintiff certainly was not.  He could not identify any misleading statements in the trip insurance offer reflected in Exhibit 1 to the complaint, *id*. at 125:8-126:12, and could not identify anything Allianz did to mislead him (even though Allianz was primarily responsible for his insurance offer), *Id*. at 17:21-25.   Because his beliefs and legal theories are different than those espoused by Plaintiff's counsel, Plaintiff is atypical of the putative class; indeed, if Plaintiff *was* typical, the class could not be certified given he neither was deceived nor relied on any purported misrepresentation.

### 3.     Plaintiff Fails to Identify Common Questions of Fact or Law

Pursuant to Rule 23(a)(2), Plaintiff does not identify common questions that are "of such a nature" that they are "capable of classwide adjudication" and "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 349-50.

Several questions posited by Plaintiff as "common" only ask whether American violated the law.  But simply "[r]eciting the[] question[]" "[i]s that an unlawful [] practice?" is insufficient to establish commonality.  *Dukes*, 564 U.S. at 349.  Other questions ask whether American "receives undisclosed kickbacks," "without a license," and whether that "is illegal." DE 311 (Mot. at 11).  But whether American is entitled to be paid a "commission" by Allianz— if the monthly payment is even deemed to be a commission—requires a state-by-state analysis. *See, e.g.*, N.C. Gen. Stat. § 58-33-10(18) ("solicit" defined to exclude "a referral to a licensed insurance agent").  The same is true as to whether the alleged RICO enterprise "has committed mail or wire fraud in connection with submissions to state insurance regulators."[6]

The remaining questions posed by Plaintiff likewise repeat elements of claims or ask questions to which there are no common answers**.**  DE 311 (Mot. at 11).  "Whether American's conduct has caused injury" requires individual inquiries into whether putative class members

---

[6] Not all states require a license to sell travel insurance.  Ex. 4 (Henson Decl. ¶ 4).  Plaintiff's failure to address how he plans to demonstrate an "illegal act" or purported "fraud" on each state regulator with common evidence dooms his request for a nationwide RICO class.  Ex. 7 (Roth Decl. ¶¶ 3-6).  In any event, Plaintiff's FDUTPA and RICO claims fail as a matter of law to the extent that they are premised on purported violations of insurance laws or regulations.  *See generally* Order on Mot. to Dismiss, *Donoff*, 18-81258, DE 121; *Dolan v. JetBlue Airways Corp.*, No. 18-62193-CIV, 2019 WL 2443527 (S.D. Fla. May 28, 2019).

relied on the statement at issue, could have purchased trip insurance coverage for less elsewhere, or even bore financial responsibility for their trip insurance.  Other questions invite inquiries into what "the net impression of the representations and omissions made on American's website would lead the reasonable consumer to believe."  Because Plaintiff has no expert survey evidence, however, he cannot even begin to claim he can answer that question on a classwide basis.  Because putative class members were exposed to over ███ specific trip insurance boxes during the class period, some of which do not even contain the statement that AGA "is the licensed producer" of the plan, those inquiries do not satisfy the commonality requirement either.  *See* Ex. 3 (Atayev Decl. ¶¶ 2-3).  And because many of Plaintiff's claims implicate questions of state insurance law, any analysis would entail a highly fragmented inquiry across all 50 states.

### D.      Plaintiff Has Not Established the Requirements of Rule 23(b)

To qualify as a Rule 23(b)(3) class action, "'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690, 698 (S.D. Fla. 2001) (citation omitted).  The predominance requirement is "'far more demanding' than Rule 23(a)'s commonality requirement." *Id.* (citation omitted).

#### 1.      Plaintiff Fails to Show that Common Questions Predominate

##### a.      RICO

To demonstrate that his RICO claim is susceptible to nationwide class treatment, Plaintiff asserts that American committed three qualifying RICO predicate acts subject to common proof: (1) mail and wire fraud against class members; (2) mail and wire fraud against state insurance regulators; and (3) money laundering.  DE 311 (Mot. at 17-19).  To prove that his fraud claims are appropriate for nationwide class treatment, Plaintiff must show by common proof that putative class members were harmed by their own or another party's reliance on material misrepresentations made by American.  *Bocciolone v. Solowsky*, 2009 U.S. Dist. LEXIS 34296, *14-15 & n.5 (S.D. Fla. 2009).  Because common issues do not predominate with respect to any of those theories, Plaintiff's nationwide RICO class should be rejected.

**Fraud against class members**: Plaintiff can neither show reliance, nor material misrepresentations, by common proof.  First, reliance.  A plaintiff cannot prevail on a RICO claim premised on mail or wire fraud "without showing that *someone* relied on the defendant's misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (emphasis

in original).  Claims premised on first-party fraud—i.e. alleged misrepresentations made to putative class members themselves—require a showing that "the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme."  *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360-61 (11th Cir. 2002); *see, Dungan v. The Acad. at Ivy Ridge*, No. 06-CV-0908, 2008 WL 2827713, at *3 (N.D.N.Y. July 21, 2008) (recognizing reliance remains an element of first party fraud claims after *Bridge*); *Coleman v. Commonwealth Land Title Ins. Co*., 318 F.R.D. 275, 287 (E.D. Pa. 2016) (same).  Such "[f]raud claims are almost always poor candidates for class certification because of the individual reliance issues."  *Pipes v. American Sec. Ins. Co*., 169 F.R.D. 382, 384 n.2 (N.D. Ala. 1996).  And unlike *Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004), on which Plaintiff relies, there is no common circumstantial evidence that can be used to infer reliance—particularly when American's survey results indicate that the trip insurance box language has little effect on customers.  *See* Ex. 5 (Butler Decl., Ex. 1, NERA-000027) (finding no difference between responses in test and control groups).

Plaintiff also cannot rely on generalized proof to show that American made material misrepresentations.[7]  To begin with, putative class members were exposed to over ██ specific trip insurance boxes over the class period, many of which do not even contain the key language Plaintiff claims to be misleading.  Ex. 3 (Atayev Decl. ¶¶ 2-3).  That alone is dispositive.  *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1236 (11th Cir. 2016) (lack of uniform exposure to alleged misrepresentation defeated class certification).  Moreover, Plaintiff cannot show that those purported misrepresentations were material to him, let alone to the putative class.  "Typically," plaintiffs submit "common evidence such as empirical research, surveys, studies or expert testimony demonstrating consumer perceptions . . . at the class certification stage" in order to prove materiality by common proof.  *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, No. MC 15-1825 (ESH), 2019 WL 3021245, at *34 (D.D.C. July 10, 2019).  Here, however, Plaintiff makes no such showing.  He also fails to submit any expert rebuttal to American's undisputed survey research, which established that ██ of respondents

---

[7] In reality, Plaintiff's RICO claim is not premised on affirmative misrepresentations, but purported omissions.  But "[a]bsent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme."  *Eller v. Equitable Trust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (citation omitted).  Here, an omission theory premised on such a theory would require a 50-state analysis as to the existence of such duties.

15

either are aware that American is compensated or agree that whether American is compensated would not impact their purchasing decision. *See* Ex. 5 (Butler Decl., Ex. 1, NERA-00030). As such, Plaintiff does not come close to satisfying his burden to show predominance with respect to his first-party fraud theory. *See Poulos v. Caesars World, Inc*., 379 F.3d 654, 664 (9th Cir. 2004) (denying certification of RICO claims as "individualized reliance issues related to plaintiffs' knowledge, motivations, and expectations bear heavily on the causation analysis).

 **Fraud on Regulators:** Plaintiff argues that Allianz submitted false information to state regulators in order to hide American's unlicensed receipt of commissions, and that these actions harmed putative class members. But even if this could suffice, any determination whether Allianz or the insurers "made materially false statements to state regulators," DE 311 (Mot. at 18), requires 50 different analyses of (1) the requirements governing licensing and compensation in each state; (2) the numerous regulatory and rate filings in each state; and (3) the impact—if any—that such statements had on each state's approval of such filings.[8] Moreover, because state laws have evolved over the class period, Ex. 4 (Henson Decl. ¶ 9), the number of inquiries necessary is still greater. Thus, Plaintiff's attempt to point to a single insurance statute—which he misinterprets[9]—is unavailing. Plaintiff also cannot show such actions proximately harmed putative class members by common proof. In *Bridge*, a third-party municipality's reliance on a bidder's false statements imposed a direct, inarguable pecuniary harm on the bidder's competitors (plaintiffs). By contrast, Plaintiff cannot show by common proof that his asserted state regulatory violations proximately and uniformly caused harm to putative class members.[10]

---

[8] Indeed, the "common evidence" on which Plaintiff purports to rely, DE 311 (Mot. at 7), is a purported "disclosure to the *Florida* Department of Financial Services," which has no relevance outside Florida. Moreover, the origin of Ex. 5 of DE 311 is questionable, as it was not submitted by Jefferson or AGA to the Florida Department of Financial Services. Ex. 4 (Henson Decl. ¶ 8).

[9] Fla. Stat. § 624.401(1) prohibits an insurer's agents from transacting insurance except as authorized by a "subsisting certificate of authority *issued to the insurer*." (emphasis added). That provision prohibits an agent from selling insurance on behalf of an insurer who does not have a certificate of authority. Because it is undisputed that the insurer here had a valid certificate of authority, *see* Ex. 4 (Henson Decl. ¶¶ 4-5), that provision has no application here.

[10] That is particularly true since Plaintiff's claims do not affect the validity and enforceability of putative class members' contracts with Allianz. *See* Fla. Stat. § 626.141 ("An insurance contract which is otherwise valid and binding as between the parties thereto shall not be rendered invalid by reason of having been solicited, handled, or procured by or through an unlicensed agent.").

**Money Laundering**: This too is a non-starter.  As American explained in its motion to dismiss, Plaintiff can prove money laundering only by showing that American engaged in transactions using proceeds of "specified unlawful activity."  18 U.S.C. § 1956(a)(1).  But the only "specified unlawful activity" that Plaintiff alleges is "mail and wire fraud."  DE 339 (Opp. to MTD at 15).  Because common issues do not predominate with respect to his fraud claims, Plaintiff cannot prove this derivative claim through generalized proof either.[11]

b.    **FDUTPA**

To state a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages."  *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).  Here, those elements are not susceptible to common proof.

The cases on which Plaintiff relies, DE 311 (Mot. at 14-15), involve putative class members who each were subjected to the identical deceptive practice.  *See, e.g.*, *Carriuolo v. GM Co.*, 823 F.3d 977, 985-86 (11th Cir. 2016) ("[E]very class member here purchased or leased the same model vehicle with the same [inaccurate] Monroney sticker attached.").  Here, by comparison, putative class members were exposed to upwards of ███ specific trip insurance offers, many of which did not even contain the key allegedly deceptive language underlying Plaintiff's claim.  *See* Ex. 3 (Atayev Decl. ¶¶ 2-3) (including offers that do not identify AGA Service Company as "the licensed producer" of the plan).  As such, Plaintiff cannot satisfy even FDUTPA's first prong by common proof.  *See, e.g.*, *Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC,* No. 15-24375-CIV-ALTONAGA, 2016 WL 8542540, at *2-3 (S.D. Fla. Dec. 1, 2016); *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, No. 3:12-CV-1366-HES-JBT, 2016 WL 7666179, at *27 (M.D. Fla. May 12, 2016) ("It would require individual inquiry to determine the various statements any particular plaintiff was exposed to, and then, whether each statement would be likely to deceive a consumer acting reasonably in the circumstances.").

Even if each putative class member had been exposed to the same language, class treatment still would be improper.  Plaintiff's FDUTPA claim is premised on the theory that

---

[11] Plaintiff vaguely suggests that he can establish a violation of 18 U.S.C. § 1956 by relying on subsections that refer to "some form of unlawful activity" instead of "specified unlawful activity." But the only provision that does not require proceeds to originate from "specified unlawful activity" is 18 U.S.C. § 1956(a)(2)(B), which addresses the knowing transportation of unlawful proceeds *across international borders* to conceal the funds or avoid reporting requirements.  That provision has no relevance here and Plaintiff's operative complaint does not allege otherwise.

17

stating that AGA is "the licensed producer" of the plan conveys that American is not an agent and does not receive compensation from Allianz.  But among other things, that leap of logic would require customers to know that "a 'producer' is *insurance parlance* for an insurance agent or broker."  DE 311 (Mot. at 3-4).  (emphasis added).  When the question of whether language is "deceptive depends, in part, on the knowledge and/or understanding of each [] customer," common issues do not predominate.  *Pop's Pancakes, Inc. v. NuCO2, Inc*., 251 F.R.D. 677, 686 (S.D. Fla. 2008); *Morris v. ADT Sec. Servs., Inc*., No. 07-80950-CIV, 2009 WL 10691165, at *14 (S.D. Fla. Sept. 11, 2009).  Where purportedly deceptive language could not deceive absent specialized knowledge, a purportedly deceptive act cannot be proven through classwide proof.

Plaintiff also fails to demonstrate that he can prove causation and damages in this case by common proof.  Although a plaintiff need not prove reliance to state a FDUTPA claim, "FDUTPA [still] requires proof of causation."  *Montgomery v. New Piper Aircraft, Inc*., 209 F.R.D. 221, 229–30 (S.D. Fla. 2001).  For all the reasons stated above—not least that putative class members were exposed to ███ specific trip insurance boxes, many which did not include the language at issue—determining causation and damages "would result in a series of mini-trials for each putative class member."  *O'Neill*, 243 F.R.D. at 480.  Plaintiff's effort to sidestep that requirement by relying on pass through cases is unpersuasive.  This case is far afield from *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. DCA 2000), where a cruise line billed customers for a port charge that in fact it kept itself.  Here, American did not charge putative class members *anything*—Allianz alone set the price for its trip insurance product and simply paid American marketing fees (just as it would pay a broadcaster or newspaper).  To show that *American* nonetheless caused damages, therefore, putative class members must show either that deceptive language induced them to purchase trip insurance or caused the price of their *particular* insurance policy to be inflated.  That would require an analysis of thousands of different Allianz travel policies.  Such issues are not susceptible to generalized proof.

Finally, Plaintiff fails to advance a viable damages theory aligned with his liability theory and susceptible to common proof.  *See Comcast Corp., v. Behrend*, 569 U.S. 27, 27-28 (2013) (instructing courts to conduct a "rigorous analysis" of whether a purported damages model fits the liability case).  Although Plaintiff's theory is that putative class members *overpaid* for insurance, he points to no common empirical proof (such as an expert model) by which such damages can be calculated.  Nor does he rebut American's expert showing that Allianz *does*

18

charge a competitive and reasonable market rate for trip insurance on American's website. Ex. 8 (Bingham Decl., Ex. 1, DELOITTE-000011). The damages theory that Plaintiff advances instead—that American must disgorge all of its compensation from Allianz—does not match its overpayment theory. Plaintiff offers no explanation (let alone expert proof) to show that any payment made to American reflects an overpayment.[12]

### c.   Unjust Enrichment

"[C]ommon questions will rarely, if ever, predominate an unjust enrichment claim." *Vega v. T-Mobile USA, Inc*., 564 F.3d at 1274. Because such claims require an "inquiry into the individualized equities attendant to each class member, courts, including this one, have found unjust enrichment claims inappropriate for class action treatment." *Id.*

Plaintiff's two counter-arguments are meritless. He first suggests that generalized proof could establish that American obtained the commissions through objectively deceptive means. But that is not enough under Florida law, because "[i]t would be unjust to compensate a consumer under this equitable theory if the consumer purchased the product without relying on the alleged deceptive practices." *Green v. McNeil Nutritionals, LLC,* No. 2004-0379-CA, 2005 WL 3388158, at *9 (Fla. Cir. Ct. Nov. 16, 2005). As shown above, whether consumers are exposed to the purportedly deceptive language at the heart of Plaintiff's claim, let alone rely on it, are not susceptible to common proof. Those individualized inquiries defeat class certification.

Plaintiff also suggests that generalized proof can establish that American is accepting commissions to which it is not legally entitled. But that is a non-starter, because Florida law provides neither a statutory, nor a common law cause of action for the recovery of consideration paid to an unlicensed person under Fla. Stat. § 626.112. *See Buell v. Direct Gen. Ins. Inc.,* 267 F. App'x 907, 909 (11th Cir. 2008) (because "no statutory remedy exists in Florida for someone who buys insurance from an unlicensed agent," "no common law claim should be recognized based on the alleged statutory violation[]"); *see also* Order on Mot. to Dismiss at 15-17, *Donoff v. Delta Air Lines, Inc*., 18-81258, (S.D. Fla. July 9, 2019), DE 121.

### d.   Florida Civil Remedies For Criminal Practices Act

---

[12] For instance, suppose a plaintiff somehow succeeded in showing that Amazon misled her by failing to disclose that a third party from which she purchased goods on Amazon's website paid Amazon a 3% marketing fee. If the product was sold for an identical price on other sites, she could not have overpaid, nor recover damages. The same individualized inquiry is needed here.

19

Finally, Plaintiff's state-RICO claim is not susceptible to common proof.  Like his federal RICO claim, this claim requires him to "demonstrate that his damages were proximately caused by such activity" for each class member.  *Jones v. Childers,* 18 F.3d 899, 912 n.15 (11th Cir. 1994).  As with his federal claim, he cannot make that showing here.

This Court finally should reject Plaintiff's one-sentence, conclusory assertion that he could establish a claim by showing American violated Fla. Stat. § 896.101 or § 624.401 by common proof.  To show a violation of Fla. Stat. § 896.101—the Florida Money Laundering Act—a plaintiff must prove the defendant engaged in a "specified unlawful activity."  Fla. Stat. § 896.101(3)(a)-(c).  If the specified unlawful activity Plaintiff seeks to show is fraud, that is not susceptible to common proof for reasons explained, *supra*.  If Plaintiff seeks to show that American violated Fla. Stat. § 624.401, relating to transacting insurance without a certificate of authority, that statute is inapplicable altogether.  *See supra* at 16 n.9.

## 2. Plaintiff Fails To Show That A Class Action Is Superior

For the foregoing reasons, a class action is not "the most fair and efficient method of adjudicating the plaintiffs' claims."  *Ulysse v. Waster Mgmt. Inc.*, No. 11-CV-80723, 2013 WL 11327137, at *2 (S.D. Fla. Sept. 13, 2013).  "[A]s the number of individual issues rises, the class action device becomes a less superior method for adjudication."  *Id.* at * 2.  The highly individualized nature of Plaintiff's claims makes the proposed class action unmanageable and undesirable relative to the alternatives.

## CONCLUSION

For all these reasons, this Court should deny Plaintiff's motion for class certification.

Dated:  September 11, 2019                    Respectfully submitted,


                                              /s/ Humberto H. Ocariz
                                              Humberto H. Ocariz
                                              hocariz@shb.com
                                              Florida Bar No.: 740860
                                              **SHOOK, HARDY & BACON L.L.P.**
                                              Miami Center, Suite 3200
                                              201 South Biscayne Boulevard
                                              Miami, Florida 33131
                                              Telephone: 305.358.5171
                                              Facsimile: 305.358.7470

-- and --

James E. Brandt (*Pro Hac Vice*)
james.brandt@lw.com
Elizabeth (Betsy) Marks (*Pro Hac Vice*)
betsy.marks@lw.com
**LATHAM & WATKINS, LLP**
885 Third Avenue
New York, New York 10022-4834
Telephone: 212.906.1200
Facsimile: 212.751.4864

*Attorneys for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of September, 2019, a true and correct copy of the foregoing was filed using the Court's CM/ECF system and was served on all counsel or parties of record on the attached Service List by the method indicated.

By: /s/ Humberto H. Ocariz
HUMBERTO H. OCARIZ

## SERVICE LIST

| | |
|---|---|
| Scott B. Cosgrove, Esq.<br>scosgrove@leoncosgrove.com<br>Alec H. Schultz, Esq.<br>aschultz@leoncosgrove.com<br>Jeremy Kahn, Esq.<br>jkahn@leoncosgrove.com<br>John R. Byrne, Esq.<br>jbyrne@leoncrosgrove.com<br>Jordi Martínez-Cid, Esq.<br>jmartinez-cid@leoncosgrove.com<br>**LEÓN COSGROVE LLC**<br>255 Alhambra Circle, Suite 800<br>Coral Gables, Florida 33134<br>Telephone: 305.740.1975<br>Facsimile: 305.437.8158<br><br>(Service via CM/ECF)<br><br>*Counsel for Plaintiff* | Humberto H. Ocariz, Esq.<br>hocariz@shb.com<br>**SHOOK, HARDY & BACON L.L.P.**<br>Miami Center, Suite 3200<br>201 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: 305.358.5171<br>Facsimile: 305.358.7470<br><br>(Service via CM/ECF)<br><br>James E. Brandt, Esq.<br>james.brandt@lw.com<br>Elizabeth (Betsy) Marks, Esq.<br>betsy.marks@lw.com<br>**LATHAM & WATKINS, LLP**<br>885 Third Avenue<br>New York, New York 10022-4834<br>Telephone: 212.906.1200<br>Facsimile: 212.751.4864<br><br>(Service via CM/ECF)<br><br>*Counsel for American Airlines, Inc.* |