UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 16-23901-CV-MARTINEZ/GOODMAN

KRISTIAN ZAMBER, on behalf of
himself and all others similarly situated,

                              CLASS ACTION

    Plaintiff,

v.

AMERICAN AIRLINES, INC.,

    Defendant.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.  INTRODUCTION ........................................................................................................... 1

II. FACTS ............................................................................................................................. 1

III. LEGAL ARGUMENT ..................................................................................................... 2

    A.  American Admitted the Classes are Properly Defined and Ascertainable ............... 2

    B.  American's Rule 23(a) Challenges Fail .................................................................... 3

        1.  Plaintiff Satisfies the Commonality and Typicality Requirements ................... 3

        2.  Plaintiff is an Adequate Class Representative .................................................. 4

    C.  Plaintiff Satisfied all Rule 23(b) Requirements ........................................................ 6

        1.  The Plaintiff's FDUTPA claim can be established with common proof .......... 6

        2.  The Plaintiff's unjust enrichment claim can be established with common proof ................................................................................................................... 7

        3.  The Plaintiff's RICO claim can be established with common proof ................ 8

            a.  Reliance and Causation ........................................................................... 8

            b.  Materiality ............................................................................................. 10

IV. CONCLUSION .............................................................................................................. 10

CERTIFICATE OF SERVICE ........................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................................................8

*Ault v. Walt Disney World Co.*,
  692 F.3d 1212 (11th Cir. 2012) ...............................................................................................3

*Bowe v. Public Storage*,
  318 F.R.D. 160 (S.D. Fla. 2015) ...................................................................................3, 9, 10

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 (2008) ................................................................................................................8

*Busby v. JRHBW Realty, Inc.*,
  513 F.3d 1314 (11th Cir. 2008) ...............................................................................................4

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ........................................................................................3, 6, 7

*Cheney v. Cyberguard Corp.*,
  213 F.R.D. 484 (S.D. Fla. 2003) .............................................................................................4

*City of Sunrise Gen. Employees' Ret. Plan v. FleetCor Techs., Inc.*,
  No. 1:17-CV-02207-LMM, 2019 WL 3449671 (N.D. Ga. July 17, 2019) .............................5

*Commodity Futures Trading Comm'n v. Fleury*,
  2010 WL 3835134 (S.D. Fla. Sept. 29, 2010) ........................................................................7

*Fitzpatrick v. Gen. Mills, Inc.*,
  635 F. 3d 1279 (11th Cir. 2011) ..............................................................................................2

*Henderson v. Emory Univ.*,
  No. 1:16-CV-2920-CAP, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) ................................5

*In re Checking Account Overdraft Litig.*,
  286 F.R.D. 645 (S.D. Fla. 2012) .............................................................................................7

*In re Emulex Corp. Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) ............................................................................................5

*In re Testoterone Replacement Therapy Prod. Liab. Litig.*,
  2018 WL 3586182 (N.D. Ill. July 26, 2018) .........................................................................10

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F. 3d 108 (2d Cir. 2013) ................................................................................................8, 9

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F. 2d 718 (11th Cir. 1987) ..................................................................................................6

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ................................................................................1, 2, 8, 10

*Latman v. Costa Cruise Lines, N.V.*,
  758 So.2d 699 (Fla. 3d DCA 2000) .........................................................................................7

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689 (S.D. Fla. 2017) ...............................................................................................6

*O'Neill v. The Home Depot U.S.A., Inc.*,
  243 F.R.D. 469 (S.D. Fla. 2006) ...............................................................................................3

*Singer v. AT&T Corp.*,
  185 F.R.D. 681 (S.D. Fla. 1998) ...............................................................................................4

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*,
  739 F.3d 579 (11th Cir. 2013) ...................................................................................................7

*Torres v. S.G.E. Mgmt., L.L.C.*,
  838 F. 3d 629 (5th Cir. 2016) ...................................................................................................9

*Turner Greenberg Assocs., Inc. v. Pathman*,
  885 So. 2d 1004 (Fla. Dist. Ct. App. 2004) .............................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................................10

*Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*,
  No. 16-00206-CV-PAM (M.D. Fla. 2019) ..............................................................................9

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) ............................................................................................ 3-4

Statutes

Fla. Stat. §625.155 ........................................................................................................................8

Fla. Stat. §624.401 ........................................................................................................................8

Other

Federal Rule of Civil Procedure 23 ...................................................................................2, 3, 6, 8

## I. Introduction

Binding Supreme Court and Eleventh Circuit precedent requires the certification of both of Plaintiff's proposed classes. Knowing this, American chooses to ignore this precedent and focus its opposition on arguing the actual merits of Plaintiff's claims. While this approach is not only incompatible with the governing law, American's tactic demonstrates perfectly why class certification is appropriate here, as in making its host of merits arguments American admits that every key question in this case is capable of resolution on a class-wide basis (Defendant simply thinks those common questions should be resolved in its favor).

Indeed, American never denies the critical allegation that underpins all of Plaintiff's claims, specifically, that American uniformly fails to disclose to its customers or state regulators that, for each purchase of an Allianz travel insurance policy through the booking path of Defendant's website, Allianz kickbacks ▅▅ of the purported insurance payment to American. Under well-settled case law, this deliberate misconduct warrants certification. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) ("Where the defendant's alleged behavior is deliberate or intentional, we have had no problem allowing class actions to proceed.").

Moreover, American ***already stipulated*** to the feasibility of resolving this matter on a class-wide (and nationwide) basis, acknowledging that the class was ascertainable and class-wide resolution was practicable and desirable. While American backed out of its agreement over an attorney's fees dispute, it cannot ask the Court to turn a blind-eye to its previous admissions.

## II. Facts

American's fact section is inaccurate in numerous respects. Plaintiff will address two inaccuracies at the outset. First, Defendant attempts to distance itself from the representations made to class members on its website by assigning responsibility for those representations to Allianz. Not only is this position objectively fanciful—after all, customers are viewing these representations on American's website and naturally would attribute them to American—it is controverted by the Marketing Agreement and testimony from Allianz. With respect to the Marketing Agreement, it gives American control over the insurance offer. *See* Ex. 1 (Marketing Agreement) § 3.2 ▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅[1] And Allianz's own corporate representative confirmed that American approves the content of the offer. *See* Ex. 2, Horwitz Dep. at 136:15-19. American cannot credibly point the blame at Allianz here and must own these

---

[1] Citations, internal quotations, and footnotes omitted and emphasis added unless noted.

representations. Second, American claims that its representations to customers over the class period varied so wildly that there is no way to pin class liability on it for any particular representation. This is misleading in two significant respects. One, it ignores a central allegation of the Plaintiff's claims, American's uniform *omission* about its financial interest in the sale of travel insurance. During the class period, American *uniformly* failed to disclose its illegal receipt of ▮ of its customers' payments for insurance policies. Two, during the class period, American made two uniform *misrepresentations* to the class—(i) it uniformly misrepresented to customers that "the insurance is offered by a third-party, Allianz Global Assistance, *not American Airlines*," when American was in fact offering and brokering the insurance in exchange for a commission, and (ii) American uniformly misrepresented to customers the *price* of the travel insurance product, telling them that they are paying Allianz a specific price for a travel insurance policy when, in fact, Allianz takes ▮ of that stated price and kicks it back to American, an unlicensed company that admittedly provides no travel insurance services to customers.

### III.  Legal Argument

American makes the following challenges to certification: (A) the ascertainability of the proposed classes; (B) the commonality, typicality and adequacy requirements of Rule 23(a); and then (C) the predominance requirement of Rule 23(b). Binding precedent defeats each challenge.

**A.     American Admitted the Classes are Properly Defined and Ascertainable**

American should not have raised an ascertainability challenge, as it is directly contrary to the position Defendant took when this case had settled. Defendant—and its counsel—have already told the Court the proposed nationwide class is ascertainable for settlement purposes. [DE 237 at 6]; *see also* Dec. of J. Brandt [DE 237-3] ¶ 4. Allianz has also provided sworn testimony that it can readily identify class members based upon its business records. Ex. 3, Naumann Decl. ("[Allianz] is capable of obtaining a list of all customers who purchased travel plans through an offer by [Allianz] on American's website beginning on at least September 1, 2012."). One could not find a clearer admission on ascertainability.

Attempting to walk-back its previous admissions, American makes an ascertainability argument that—if accepted—would make class certification impossible in any case. Essentially, American attempts to convert the ascertainability requirement into a merits inquiry, arguing that Plaintiff must show reliance, causation and damages on an individualized basis. That is simply not the law. *See Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (individual reliance irrelevant to FDUTPA certification); *Klay*, 382 F. 3d at 1260 ("the fact that damages must

be calculated on an individual basis is no impediment to class certification."); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) ("the mental state of each class member is irrelevant"). In the face of this binding precedent American cites *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006), a case with an analysis that is irrelevant here. There, the court found the class definition inadequate because "individuals who may have been informed by Home Depot about the details of the damage waiver" could be included. *Id*. As stated, *supra*, this is a case with a uniform failure by American to advise ***anyone*** about its receipt of insurance kickbacks. No consumer—anywhere—had any knowledge American was receiving ▌ of their policy, as American's corporate representative admitted. Ex. 4, Gustafson Tr. at 92:16-20. Nor has American identified a single consumer who had such knowledge.

**B.   American's Rule 23(a) Challenges Fail[2]**

1. Plaintiff Satisfies the Commonality and Typicality Requirements

As with its ascertainability challenge, American's argument that Plaintiff cannot satisfy Rule 23(a)'s commonality or typicality requirements abjectly ignores controlling precedent. Strangely, American asserts that Plaintiff fails to satisfy the Rule 23(a) commonality requirement, even though the Eleventh Circuit has held "for purposes of Rule 23(a)(2) ***even a single common question will do***." *Carriuolo*, 823 F.3d at 984. Plaintiff identified over a dozen common questions in his motion. For example, Plaintiff identified whether Defendant participated in a racketeering enterprise, a basic question common to the entire class. *See Bowe v. Pub. Storage*, 318 F.R.D. 160, 170 (S.D. Fla. 2015) ("whether Public Storage participated in a racketeering enterprise as alleged in the Amended Complaint…is a common question identified by Plaintiffs that is capable of classwide resolution"). Not surprisingly, American offers this Court ***no case*** finding a lack of Rule 23(a) commonality in support of its argument, because its argument lacks credibility.

American's typicality challenge fares no better. Here, Defendant simply misunderstands the law. The appropriate inquiry is whether the claims of Plaintiff and the class arise from the same nexus of facts or a similar legal theory. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) ("Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist a sufficient nexus ... between the legal claims of the named class representatives and those of individual class members to warrant class certification. This nexus exists if the claims or defenses of the class and the class representative arise from the same event or

---

[2] American does not contest Rule 23(a)'s numerosity requirement, so Plaintiff does not address it.

pattern or practice and are based on the same legal theory"). *See also Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) ("[t]he typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories.").

That requirement is met here. Mr. Zamber's claims arise from a fact pattern identical for the proposed classes (purchase of an insurance policy on American's website), and the legal theories underlying his claim are identical to those of the class. Moreover, given the objective legal standards for FDUTPA deception and RICO materiality, the Plaintiff's subjective beliefs are irrelevant.[3] Again, as with its commonality argument, American offers **no case** finding a lack of typicality. "The threshold for typicality is low." *Singer v. AT & T Corp.*, 185 F.R.D. 681, 689 (S.D. Fla. 1998). It is easily met in consumer class actions, and it is easily met here.

2. Plaintiff is an Adequate Class Representative

American makes the standard defense argument that the Plaintiff is not an adequate class representative. It fails.

Defendant's adequacy challenge is more of an attack on Plaintiff's counsel as opposed to Plaintiff, as American pejoratively refers to this case as "lawyer-manufactured litigation," and then accuses Mr. Zamber of "not pursuing his claims against American in his own interest." DE 352 at 10. This personal attack is inappropriate, and once again, American has no Eleventh Circuit precedent to cite in its favor.

Plaintiff will first dispense with American's strawman argument that this case is "lawyer-manufactured litigation," and that Plaintiff was somehow improperly "solicited." As to the solicitation claim, American knows that it is irrelevant, and it knows that corporate defendants such as itself are not the parties that the legal ethics "solicitation" rules seek to protect. Here, Mr. Zamber was not solicited, he is a former colleague of a former León Cosgrove partner who sent him an email through LinkedIn asking if he had ever purchased travel insurance. Even if Mr. Zamber *was* solicited, that is irrelevant under binding precedent. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1324 (11th Cir. 2008) ("Busby's counsel's violation, if any, cannot be considered a major violation as Busby's counsel could have reasonably believed that he had a prior professional relationship with

---

[3] There is also no merit to American's argument that Plaintiff is somehow subject to unique defenses. While untrue factually, even if true, it would not defeat a typicality finding. *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 493–94 (S.D. Fla. 2003) ("typicality is not defeated by specific defenses or counterclaims to the named plaintiff's claim. This is especially the case where the lead plaintiff alleges that he and the proposed class members were subject to a pattern of fraudulent conduct and suffered damages arising out of the same violations of federal and common law.").

Busby. Therefore, we conclude that the district court did not abuse its discretion in finding that Busby was an adequate representative of the proposed class."). While American attempts to use "solicitation" as some sort of loaded word, the ethical solicitation rules exist to protect the **targets of the solicitation** (think Danny DeVito sticking business cards in the casts of hospital patients in John Grisham's *The Rainmaker*); they do not exist to protect American from class action lawsuits.

American fares no better with its claims that Mr. Zamber lacks knowledge of the case, and that he did not do any personal investigation into his claims. American's attack here drips with hypocrisy. Specifically, American accuses Mr. Zamber of not knowing the meaning of "FDUTPA" (DE 352 at 6), but it then asks the Court to forgive its own employees for stating—repeatedly—that American ▬▬▬▬▬▬▬▬▬▬ (which is an admission of criminal conduct). American says "it is neither surprising, nor relevant, that employees who are neither legal, nor insurance, experts, sometimes use inexact vocabulary…" *Id*. at 3, n.3. In American's world, if Mr. Zamber—who is also "neither [a] legal, nor insurance, expert"—cannot state his claims in the manner an attorney would he is unfit to represent the class, but if its own senior employees admit to criminal conduct, the Court should deem it irrelevant. Not surprisingly, there is no law to support that position, and American cites to none.

The truth is Mr. Zamber 1) does know a great deal about this case; 2) actively participates in the litigation of the matter in consultation with his counsel; and 3) is not required to independently investigate his claims, as he is entitled to rely on counsel's investigation. Mr. Zamber's engagement letter with León Cosgrove is not evidence of inadequacy, it perfectly states the governing law. "[R]elying on counsel to prosecute an action does not make a lead plaintiff inadequate." *City of Sunrise Gen. Employees' Ret. Plan v. FleetCor Techs., Inc*., No. 1:17-CV-02207-LMM, 2019 WL 3449671, at *6 (N.D. Ga. July 17, 2019) (granting class certification). *See also In re Emulex Corp. Sec. Litig*., 210 F.R.D. 717, 721 (C.D. Cal. 2002) ("Plaintiffs' reliance on counsel to file documents and to investigate and litigate the case does not show a failure to supervise or an abdication of their duties as class representatives."); *Henderson v. Emory Univ*., No. 1:16-CV-2920-CAP, 2018 WL 6332343, at *6 (N.D. Ga. Sept. 13, 2018) ("Inadequacy for a plaintiff's lack of involvement or awareness is rare. It requires the plaintiffs to have abdicated their role in the case beyond that of furnishing their names as plaintiffs, [such that] the attorneys, in essence, are the class representative.").

As shown in Plaintiff's testimony in Exhibit 5, Mr. Zamber is the epitome of an adequate class representative. He 1) frequently speaks with his counsel to discuss the case ("at least weekly,

if not more"); 2) fully understands his claims (*id.* at 75:7-20); 3) reviews all filings and keeps a file on the case ("anything they filed, I reviewed beforehand"); 4) Plaintiff knows his class representative obligations ("To stay informed of the case, to be involved with any decisions of approvals or review of documents, which I have been the whole time"); 5) attended mediation; 6) produced discovery and sat for deposition; and 7) is ready and willing to attend trial and testify.[4] He has not abdicated control of this case to his attorneys, and the law expressly grants him the right to rely on his counsel to aggressively prosecute the matter. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) ("adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class.").

  **C.** **Plaintiff Satisfied all Rule 23(b) Requirements**

   1. <u>The Plaintiff's FDUTPA claim can be established with common proof.</u>

With respect to FDUTPA, the Plaintiff can use common proof to establish all three elements: (a) a deceptive act; (b) causation; and (c) damages.

With respect to the deception element, American asks this Court to follow yet another red herring and simply ignore the common misrepresentation that ***Defendant admits*** every class member saw. Specifically, each class member saw the following: "This insurance is offered by a third party, Allianz Global Assistance, ***not American Airlines***." American admitted each class member saw this. *See* DE 311 at Ex. 4 ███████████████████████████████████████████████ ███████████████ American's argument about "1,400" different offers is irrelevant, as their own evidence ***proves Plaintiff's case.*** Specifically, the declaration of Begench Atayev lists eight allegedly "different" offers, yet ***every single one*** contains the identical "not American Airlines" language. The jury will make a single determination as to whether this is deceptive, and certification is mandatory under *Carriuolo v. GM Co.*, 823 F.3d 977, 990 (11th Cir. 2016).

American also overreaches attempting to argue Plaintiff cannot show causation and damages by common proof. With respect to the causation element, American struggles with the legal reality that, in FDUTPA cases, class members "need not submit individualized proof to establish causation." *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 697 (S.D. Fla. 2010). To avoid this reality, American mounts a futile attempt to distinguish this case from the "pass-through" cases

---

[4] It is wrong for American to claim that Mr. Zamber did not review the complaint before it was filed. "Q. And you reviewed the complaint before it was filed? A. Of course." *Id.* at 15:9-11.

that came before it, which hold that, when a defendant-company deceives its customers about where their money is going—representing that it is "passing through" to X when, in fact, part of it is going to the defendant-company—the defendant-company damaged its customers. American's only real argument to distinguish the legion of pass-through cases is a claim that it was not the entity charging consumers, pointing the finger at Allianz. This is irrelevant. First, Plaintiff *is* challenging a payment he made to American, namely, the ■ kickback that he unwittingly paid Defendant as part of the transaction. Second, if American thinks that pass-through cases require it to touch the money first, it is mistaken. *Latman v. Costa Cruise Lines*, 758 So. 2d 699, 704 (Fla. 3d DCA 2000) (rejecting the argument of defendants that "they had no liability under FDUTPA because in numerous instances they sold their tickets through travel agents").[5]

Finally, with respect to the damages element, American argues that Plaintiff has failed to identify a common method of proving FDUTPA damages. Of course, individual questions of damages do not preclude class certification. *Carriuolo*, 823 F.3d at 988. Still, American's arguments are once again legally and factually incorrect. First, Defendant is wrong that the Plaintiff must establish "that the price of the travel insurance is inflated." The pass-through case law is clear—the actual damages are the amount of the kickback American received from Allianz (*see supra*). And Plaintiff's damages model is entirely consistent with what he alleged in his complaint, as he only needs to establish that damages can be calculated in the aggregate on a classwide basis from available records, which he can. *See, e.g., Commodity Futures Trading Comm'n v. Fleury*, 2010 WL 3835134, at *2 (S.D. Fla. Sept. 29, 2010), aff'd 479 F. App'x 940 (11th Cir. 2012).

2.  <u>The Plaintiff's unjust enrichment claim can be established with common proof.</u>

American does not credibly challenge certification of Plaintiff's unjust enrichment claim, nor could it, as it already agreed to a nationwide settlement premised on this claim. Realizing it is difficult to argue against certification after stipulating to it for settlement purposes, American cites to a single Florida state trial court opinion, perfectly demonstrating there is no binding authority behind American's arguments. There is, however, a multitude of authority certifying unjust enrichment claims for a Florida class. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 286 F.R.D.

---

[5] Also with respect to causation, American claims that the Plaintiff's FDUTPA claim requires proof of price inflation. That is another misstatement of law. Under FDUTPA, where, as here, a company has deceived customers into thinking that their entire payment is going to a third-party, ***any portion*** received by the company qualifies as damages. *Turner Greenberg Assocs., Inc. v. Pathman*, 885 So. 2d 1004, 1008 (Fla. Dist. Ct. App. 2004) ("[A]n appropriate measure of damages is the undisclosed profit[.]").

645, 657–59 (S.D. Fla. 2012). Moreover, American is wrong to suggest an unjust enrichment class cannot be predicated upon its uniform act of receiving insurance kickbacks without a license. *See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (unjust enrichment claim lies when "an entity accepts and retains benefits that it is not legally entitled to receive in the first place."). While American claims there is no civil remedy for its violation of state insurance law, it is flat wrong, as Plaintiff alleges American is in violation of Fla. Stat. § 624.401, and that statute has an express civil remedy provision in Fla. Stat. § 624.155. This is a simple certification based upon American's uniform illegal conduct.

3. The Plaintiff's RICO claim can be established with common proof.[6,7]

With respect to RICO, American once again makes merits arguments, not class certification arguments—a plainly improper tactic. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Setting aside American's merits arguments (which are unavailing in any case), Plaintiff can use common proof to establish American's pattern of racketeering activities, as he has already demonstrated that American participated in a nationwide conspiracy to hide from consumers and regulators that it earns a ▇ kickback on each insurance policy sold through its website. This case is on-point with *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), where the Eleventh Circuit noted the "very gravamen of the RICO claims is the 'pattern of racketeering activities' and the existence of a national conspiracy."

a. *Reliance and Causation*

American argues that Plaintiff's RICO claim requires him to prove reliance, and that he cannot use common proof to do so. It is wrong on both counts. With respect to the requirement of reliance, as the Supreme Court made clear in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008), "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." Although reliance is not an element of the Plaintiff's RICO claim, he can use common proof to establish it here.

---

[6] American's opposition does not dispute that Plaintiff can show damages by common proof. As it speaks only to reliance, causation and materiality, Plaintiff will reply only to these issues.
[7] The analysis for Plaintiff's Florida RICO claim tracks his federal RICO claim, and certification of that claim is appropriate for the same reasons as set forth herein.

As to <u>first-party reliance</u>, cases like this, involving standardized misrepresentations[8] and overpayment by class members, are amenable to proof of causation on a classwide basis because the class members' overpayment is sufficient proof—in and of itself—of detrimental reliance. In *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013), the Second Circuit affirmed the certification of a class of customers alleging that the defendant engaged in fraudulent billing in violation of RICO. The material misrepresentation at issue there was the "concealment of the fact of a mark-up" and was made to all class members uniformly. The court concluded that the fact of class members' overpayment alone "constitute[d] circumstantial evidence that the plaintiffs lacked knowledge of the scheme." *Id.* at 120. The court found that a jury could reasonably infer from this "that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed." *Id.* at 120. Similarly, in *Bowe v. Public Storage*, Judge Ungaro, when presented with a fact pattern strikingly similar to the facts of this case, certified a national RICO class where the plaintiff alleged, as the Plaintiff alleges here, that the defendant failed to disclose its financial interest in insurance policies. 318 F.R.D. 160, 181 (S.D. Fla. 2015).

One final note on first-party reliance. Where, as here, there is no evidence that class plaintiffs *knew* about the fraudulent scheme, an inference of reliance is particularly justified. *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 643 (5th Cir. 2016) (holding district court, in certifying a RICO class, correctly concluded that individual issues of reliance will not predominate at trial where "[d]efendants produced no evidence that a single class member even knew of the fraud"). Here, American universally concealed its fraudulent conduct. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 121 (rejecting the notion that individualized issues of reliance predominated because the "record d[id] not contain a single piece of evidence suggesting 'actual individual knowledge on the part of a specific customer'" of the alleged misrepresentations).

As to <u>third-party reliance</u>, American's argument that common proof does not exist is incorrect. In short, American argues that, to prove third-party reliance, Plaintiff will have to establish that it violated the insurance laws of fifty different states. American is wrong on multiple fronts. One, where, as here, a plaintiff has alleged that a defendant's common course of conduct violates the laws of all fifty states, a court may certify a RICO class based on such allegations. *Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props., Inc.*, at *9-10 (M.D. Fla. 2019)

---

[8] Plaintiff has already demonstrated the existence of a nationwide misrepresentation (the "not American Airlines") language that American admits appears in every offer to this day.

(certifying national RICO class where plaintiff had alleged that defendant's deceptive lease agreements violated state laws) (attached as Ex. 6). Two, Plaintiff has already produced evidence that *proves* that American's scheme with Allianz violates the laws of all fifty states. By Defendant's own admission: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [DE 296-1] and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [DE 296-5]. So while American's admissions negate the need for any proof, common proof exists.

### b. Materiality

Materiality in a RICO case is an objective inquiry, and here Plaintiff can show it by common proof. *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 2018 WL 3586182, at *20 (N.D. Ill. July 26, 2018) (noting, when certifying RICO class, that "materiality for RICO purposes need not be assessed on a [plaintiff-by-plaintiff] basis, because the inquiry is an objective one"). The jury will be able to answer on a class-wide basis whether American's statement that the insurance is offered by a third-party and "not American Airlines," is a material misrepresentation or omission when Defendant proceeds to retain ▇▇ of each policy sold. Again, there is no distinction between this case and *Klay* or *Public Storage* (American does not even attempt to distinguish the latter).

In response, American does nothing more than criticize Plaintiff for not providing an expert survey (which is not required), and then point to its own self-serving expert report. American's expert report, however, proves the point, as its central conclusion is that American's misrepresentations and omissions are **not material to anyone**, thereby admitting it is a common question. Again, while American is once again arguing the merits, it has shown that the jury can make a single determination on this issue on a class-wide basis (American just wants the jury to make that decision in its favor).[9] That is the prototypical common question. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (a common question is one where "determination of its truth *or falsity* will resolve an issue that is central to the validity of each one of the claims in one stroke.") (emphasis added)).

### IV. CONCLUSION

Plaintiff respectfully requests that the Court certify the proposed classes, appoint Plaintiff as class representative, and appoint León Cosgrove, LLP as class counsel.

---

[9] In any case, American's survey expert will not survive Plaintiff's forthcoming *Daubert* challenge, as the survey—ironically—materially misled the respondents by 1) not specifying the **amount** American receives for each policy, and 2) not advising the respondents that the source of the "compensation" paid to American is actually the consumer himself.

Dated:  September 27, 2019

Respectfully submitted,

*s/ Alec H. Schultz*
Scott B. Cosgrove
  Fla. Bar No. 161365
Alec H. Schultz
  Florida Bar No. 35022
John R. Byrne
  Fla. Bar No. 126294
Jeremy L. Kahn
  Fla. Bar No. 105277
LEÓN COSGROVE, LLP
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:     305.740.1986
Facsimile:     305.437.8158
Email:     scosgrove@leoncosgrove.com
Email:     aschultz@leoncosgrove.com
Email:     jbyrne@leoncosgrove.com
Email:     jkahn@leoncosgrove.com

*Counsel for Zamber and the Class*

## CERTIFICATE OF SERVICE

I certify that on September 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn will serve a copy by email to all counsel of record.

*/s/ Alec H. Schultz*
Alec H. Schultz