**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

Case No.: 1:16-CV-23901-MARTINEZ/GOODMAN

KRISTIAN ZAMBER, on behalf of
himself and all others similarly situated,

      Plaintiff,

vs.

AMERICAN AIRLINES, INC.,

      Defendant.

_____

**RENEWED MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ...........................................................................5

      A.    The Booking Process ..............................................................................5
      B.    The AAdvantage Terms and Conditions..................................................5
      C.    Procedural Posture .................................................................................8

III.  THIS ACTION SHOULD BE TRANSFERRED TO FEDERAL COURT IN
      TEXAS.............................................................................................................10

      A.    American's Motion To Transfer Is Neither Waived Nor Untimely ......10
            1.    Raising The Forum Selection Clause In An Answer Does Not
                  Constitute Waiver ......................................................................11
            2.    American's Participation In Litigation Is Not A Waiver............12
            3.    American Did Not Waive By Waiting Until The Resolution Of
                  Plaintiff's Motion For A Settlement To Renew Its Motion To
                  Transfer .....................................................................................14
      B.    Plaintiff's Motion To Transfer Should Be Granted ..............................15
            1.    Legal Standard ...........................................................................15
            2.    The Parties' Agreed-To Forum Selection Clause Requires Transfer ........17
            3.    The Section 1404(a) Factors Also Weigh in Favor of Transfer................23

IV.   CONCLUSION.................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*2215 Fifth St. Assocs., LP v. U-Haul Int'l, Inc.*,
    148 F. Supp. 2d 50 (D.D.C. 2001) .........................................................................15

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,
    571 U.S. 49 (2013)................................................................................................16, 25

*Barnett v. Network Sols., Inc.*,
    38 S.W.3d 200 (Tex. App. Eastland 2001, pet. denied) .........................................22

*Bassett v. Elec. Arts Inc.*,
    2015 U.S. Dist. LEXIS 36175 (E.D.N.Y. Feb. 9, 2015)........................................19

*Clisham Mgmt., Inc. v. Am. Steel Bldg. Co., Inc.*,
    792 F. Supp. 150 (D. Conn. 1992).........................................................................11

*Coffee Bean Trading-Roasting, Ltd. Liab. Co. v. Coffee Holding, Inc.*,
    510 F. Supp. 2d 1075 (S.D. Fla. 2007) .................................................................16

*In re Daily Fantasy Sports Litig.*,
    2019 U.S. LEXIS 206689 (D. Mass. Nov. 27, 2019) ...................................2, 18, 21

*Davis v. USA Nutra Labs*,
    303 F. Supp. 3d 1183 (D.N.M. Mar. 28, 2018) .....................................................19

*Ferraro Foods v. M/V Izzet Incekara*,
    2001 U.S. Dist. LEXIS 12338 (S.D.N.Y. Aug. 15, 2001)......................................11

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012).................................................19, 20, 21, 22

*Great Am. Ins. Co. v. Nippon Yusen Kaisha*,
    2013 U.S. Dist. LEXIS 67175 (N.D. Cal. May 10, 2013) ......................................11

*In re Intern. Profit Assoc., Inc.*,
    286 S.W.3d 921 (Tex. 2009)...........................................................................21, 22

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
    2018 U.S. Dist. LEXIS 65963 (E.D. Tex. Mar. 1, 2018).......................................13

*Kerobo v. Sw. Clean Fuels, Corp.*,
    285 F.3d 531 (6th Cir. 2002) .................................................................................11

i

*Klebba v. Netgear, Inc.*,
   2019 U.S. Dist. LEXIS 17833 (W.D. Tex. Feb. 5, 2019)..................................................21, 22

*Koster v. Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947)..........................................................................................................17

*McArthur v. Kerzner Int'l Bahamas Ltd.*,
   607 F. App'x 845 (11th Cir. 2015) ..................................................................................16

*Meras Eng'g, Inc. v. CH2O, Inc.*,
   2013 U.S. Dist. LEXIS 5426 (N. D. Cal. Jan. 14, 2013) ........................................................11

*Moghaddam v. Dunkin' Donuts, Inc.*,
   2002 U.S. Dist. LEXIS 14952 (S.D. Fla. Aug. 13, 2002)....................................................17

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ........................................................................................22

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)..........................................................................................................17

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004)............................................................................................22

*Retterath v. Homeland Energy Sols., LLC*,
   2014 U.S. Dist. LEXIS 57259 (S.D. Fla. Feb. 20, 2014)..............................................16, 17

*Rigby v. Flue-Cured Tobacco Coop. Stabilization Corp.*,
   2006 U.S. Dist. LEXIS 28183 (M.D. Ga. May 11, 2006) ....................................................17

*SE. Consulting Grp. v. Maximus, Inc.*,
   387 F. Supp. 2d 681 (S.D. Miss. 2005)..............................................................................11

*Segal v. Amazon.com, Inc.*,
   763 F. Supp. 2d 1367 ......................................................................................................22

*Shaw v. U.S.*,
   422 F. Supp. 339 (S.D.N.Y. 1976) ....................................................................................11

*Sherman v. Moore*,
   86 F.R.D. 471 (S.D.N.Y. 1980) ........................................................................................11

*Sherman v. U.S.*,
   246 F. Supp. 547 (W.D. Mich. 1965) ................................................................................11

*Stiles v. Bankers Healthcare Grp., Inc.*,
   637 F. App'x 556 (11th Cir. 2016) ..................................................................................16

ii

*Stillwater Min. Co. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 7983 (S.D.N.Y. May 12, 2003)...........................................................24

*Temple v. Best Rate Holdings LLC*,
   360 F. Supp. 3d (M.D. Fla. 2018) ...................................................................................19, 20

*Woods v. Christensen Shipyards, Ltd.*,
   2005 U.S. Dist. LEXIS 42994 (S.D. Fla. Sept. 23, 2005) ............................................4, 12, 15

## STATUTES

28 U.S.C. § 1391(b)(1) .....................................................................................................18

28 U.S.C. § 1404 ...................................................................................................... *passim*

28 U.S.C. §1404(a) .................................................................................................... *passim*

## RULES

Fed. R. Civ. P. Rule 45 ....................................................................................................24

Fed. R. Civ. P. Rule 45(c)(1) ...........................................................................................25

Defendant American Airlines, Inc. ("American") respectfully submits this motion to transfer venue to the Northern District of Texas pursuant to 28 U.S.C. §1404(a), and in support thereof states as follows.

## I.   INTRODUCTION

Plaintiff Kristian Zamber is a tech savvy, voluntary participant in American's valuable AAdvantage frequent flyer program.  He acquired the free ticket for the travel at issue in this case using AAdvantage "miles."  As part of that bargain, and in order to acquire his ticket with "miles" he admittedly "clicked … agreement to … the AAdvantage terms and conditions."  ECF 126 (Opp. to Mot. to Transfer Venue) at 12.  Those terms and conditions expressly provided that "[b]y accessing your AAdvantage account on AA.com, you agree to the AA.com site usage policy," which set forth Mr. Zamber's agreement to bring any claim relating to his use of American's website in the state or federal courts of Tarrant County, Texas.  *See* ECF 117-1 (Blaise-Shamai Decl.) at ¶ 3 & Ex. B ("Any lawsuit brought by you related to your access to, dealings with, or use of the Site must be brought in the state or federal courts of Tarrant County, Texas.").  Having accepted the benefits of participation in the AAdvantage program and used those benefits to acquire a free ticket, Plaintiff breached his side of the bargain by filing a lawsuit against American in Miami, rather than Texas.

Enforcement of Plaintiff's forum-selection clause is warranted here.  First, Plaintiff agreed to bring his claims in Texas and should be held to his agreement.  Plaintiff is an admitted "IT guy" who specializes in computer-based development/programming, and whose job included (and probably still includes) building websites or web applications. Ex. A (Zamber Depo. Tr.) at 60:14-21; 81:19-20.  When he signed into his account, it is undisputed that he was presented with a statement right next to the log-in button stating "By logging in, I accept the AAdvantage terms and conditions and privacy policy."  *See, e.g.*, ECF 117-1 (Blaise-Shamai Decl.) at ¶ 2.  The

1

AAdvantage terms and conditions were also available via a prominent hyperlink.  *Id.*  Plaintiff himself admits that he agreed to be governed by the AAdvantage Terms and Conditions— recently acknowledging that "Plaintiff did click something and was told that the click manifested an acceptance of certain terms and conditions." ECF 420-1 (Plaintiff's Draft Report & Recommendation on Class Certification) at 30.

The AAdvantage terms and conditions specifically provide that "[b]y accessing your AAdvantage account on aa.com, you agree to the aa.com site usage policy" and allow individuals to review that site usage policy via another prominent hyperlink—access no different than asking an individual to turn a page or scroll down.  The cases confirm what is both fair and obvious: (1) consumers who affirm their agreement to a website's terms and conditions are bound by those terms; and (2) a hyperlink is today's version of turning the page, such that the fact that you need to click on a hyperlink to read the full set of terms and conditions does not permit you to evade your agreement to those terms.  Given Plaintiff's background as a computer programmer and web application developer, his claim that the format of the terms and conditions on American's website should not bind him is particularly dubious.  *See, e.g.*, *In re Daily Fantasy Sports Litig.*, 2019 U.S. LEXIS 206689, at *54 n.6 (D. Mass. Nov. 27, 2019) (noting that it is "highly implausible" that individuals who were "not ingenues when it comes to the internet" would have been fooled by notice that clicking "Play Now" next to text about terms and conditions amounted to consent to those terms).

Second, American has not waived its rights to enforce the forum selection clause.  To the contrary, American has raised the forum selection clause throughout this case, beginning with its December 8, 2017 Answer (ECF 95) at ¶ 106, and followed shortly thereafter by filing a motion

to transfer under 8 U.S.C. § 1404(a), on March 15, 2018.  (ECF 117).[1]  That motion awaited a ruling for six months, until September 17, 2018, when Judge Martinez denied it without prejudice as moot.  While discovery transpired in the interim, the governing scheduling order left American no choice but to participate.  The cases are clear that American's participation was not a waiver.

When Plaintiff's motion to enforce the purported settlement was ultimately denied, on May 23, 2019, American quickly filed a Notice of Pending Motion on June 5, 2019, advising the Court that its transfer motion was ripe for decision.  *See* ECF 283.  Almost immediately thereafter, Plaintiff moved the Court to require American to refile the transfer motion so he could rebrief it.  *See* ECF 288.  American's response to that motion included case law demonstrating that American did not have to refile to make it ripe for decision.  ECF 297.  That remained unresolved for another six months, until the parties' scheduling conference with Judge Goodman on November 20, 2019, at which time he determined that American should refile the motion.

In short, from the moment of its first pleading in this case, American has consistently sought to hold Plaintiff to his contractual agreement that this dispute should be heard in the courts of Tarrant County, Texas.  The only meaningful thing that happened in the case before American raised the forum selection clause is that the Court decided the motion to dismiss; American had not produced or conducted any substantial discovery, nor had its employees sat for any depositions.  American's repeated invocation of the forum selection clause powerfully underscores that its conduct falls well short of kind of "unequivocal acts or conduct evincing an

---

[1] In its recent November 21, 2019 Order, the Court noted that at this point the action is up to ECF 437.  That is so.  But, as we explain below, American did not delay asserting the venue provision and thus should not be deprived of its contract rights to forum selection in light of its repeated requests for enforcement.  Its compliance with scheduling orders while awaiting decision on the venue motion is not a waiver.

intent to waive" necessary to establish waiver by conduct. *Woods v. Christensen Shipyards, Ltd*., 2005 U.S. Dist. LEXIS 42994, at \*7 (S.D. Fla. Sept. 23, 2005) (internal citations omitted).

Third, of course by now discovery has occurred. But that also is not a reason to deny enforcement of the parties' agreement. The discovery took place largely in places convenient to the witnesses. The same will not be true of the trial. American's witnesses and documents are in Tarrant County. It has a right to trial there in a place convenient to its witnesses and to a jury pool in the contractually agreed forum. Moreover, the most significant substantive motions remain to be resolved, including American's motion to dismiss the significantly revised amended complaint, American's motion for summary judgment, and Plaintiff's motion for class certification, not to mention all of the forthcoming pretrial motions.[2] Given that American first raised its right to a trial in Tarrant County, Texas on December 8, 2017, well before any substantial discovery had occurred, it would be inequitable to hold the subsequent passage of time against American, particularly when it repeatedly raised and sought to enforce its rights.

At bottom, Plaintiff admits that he entered into and confirmed his agreement to terms and conditions in exchange for becoming a participant in American's valuable frequent flyer program and acquiring his ticket for the trip at issue here. He likewise took advantage of American's commitments under that agreement, by using his AAdvantage miles to book free travel. But while he expected American to live up to its part of the bargain, he is unwilling to abide by his. His entire effort to avoid trial in Tarrant County is just a request that the Court free him from his side of the bargain. That is neither fair nor consistent with the law. The Court should grant the motion to transfer.

---

[2] The motion should be resolved prior to resolution of these motions, so that if the case is transferred, as American believes the contract and law require, the motions may be decided by the Tarrant County, Texas judge that would supervise the trial.

## II.     FACTUAL BACKGROUND

### A.     The Booking Process

American is incorporated in Delaware with its principal place of business in Texas.  *See* ECF 296 (Am. Compl.) at ¶ 7.  One of the ways customers may book travel on American flights is by visiting its website at www.AA.com.  *See, e.g., id.* ¶¶ 11-13.  On the website, customers can search for, select, and pay for their flights.  *See id.*

Plaintiff is a resident of Sarasota County, Florida.  *See id.* at Ex. 12.  On March 20, 2016, he booked travel on American via the AA.com website using frequent flyer miles.  *Id.* ¶ 59; Ex. 5 to ECF 1.[3]  Before Plaintiff booked the flight using miles, he logged into his AAdvantage account via the AA.com website.[4]  ECF 117-1 at 2; *see also* ECF 420-1 at 27.  At the time, Plaintiff also purchased a trip insurance policy for $24 directly from Allianz that was advertised on an Allianz-operated dialogue box that appears on American's website as he booked his flight. *See* ECF 1 ¶ 11, 40.

### B.     The AAdvantage Terms and Conditions

Many American customers elect to join American's AAdvantage frequent flyer program, an entirely voluntary program through which American customers can earn valuable frequent flyer miles they can utilize to obtain free domestic or international airline tickets, upgrade their class of travel, and other benefits.  In addition, AAdvantage members are eligible to earn status that affords repeat customers the opportunity to secure complimentary upgrades and earn frequent flyer miles more quickly.

---

[3] Exhibit 5 to the Complaint is Plaintiff's "Letter of Confirmation" from Allianz, and the name of the insurance plan listed is "Award Trip Protection."  This shows that Plaintiff booked his flight using miles, as "award" travel is travel booked with miles.

[4] To purchase a ticket with miles, a customer must be an AAdvantage member (American's frequent flyer program).  One can only book travel on AA's website using miles by logging into one's AAdvantage account.  *See* Ex. 1 (Declaration of Bridget Blaise-Shamai).

In exchange for the valuable opportunity to participate in that benefit program, AAdvantage members agree to various terms and conditions, including American's site usage policy. Each time customers access their AAdvantage account when booking travel (whether using award miles or by purchasing with a credit card), they must affirmatively agree to be bound by the website's terms and conditions as a condition of logging in. *See www.AA.com/loyalty/login?uri=%2floyalty%2flogin&previousPage=&bookingPathState Id=&marketId=* (last visited March 12, 2018) (highlighting added); *see also* ECF 117-1 (¶ 2) (noting customers were presented with a substantially similar log-in screen at all times "from at least January 1, 2016 through the present" in March 2018).



When logging into his AAdvantage account, therefore, Plaintiff affirmatively acknowledged that "[b]y logging in, I accept the AAdvantage terms and conditions and privacy policy." Those terms and conditions are expressly referenced and hyperlinked on the log in

screen.  *See* ECF 117-1.  The terms and conditions provide that "[t]he AAdvantage program

Terms and Conditions are governed by and to be interpreted in accordance with the laws of the

State of Texas."  *Id.* at Ex. B.  The terms and conditions also provide that "[b]y accessing your

AAdvantage account on AA.com, you agree to the AA.com site usage policy," which was

followed by a brightly highlighted hyperlink at which a customer could "[v]ew the AA.com site

usage policy."  *Id.*  The site usage policy is also available under the hyperlink identified as

"Legal, privacy, copyright" in the second column of the gray box on the log in screen above.

Plaintiff's Amended Complaint underscores his awareness and use of hyperlinks on the AA.com

site; indeed, he expressly relies on excerpts from American's website (such as the "Trip

insurance" link and "FAQs" link, both of which are hyperlinked in adjacent columns in the same

gray box).  AC ¶ 38 and AC Ex. 10 at 13.

The site usage policy contains, among other things, a series of independent agreements

within the same paragraph; these include a governing law provision, a mandatory forum

selection clause, and a class action waiver.  The relevant portion of the policy states:

> **Forum for actions, governing law, and procedural restrictions.**
> You agree that this Agreement is made and entered into in Tarrant
> County, Texas. You agree that Texas law governs this Agreement's
> interpretation and/or any dispute arising from your access to,
> dealings with, or use of the Site, without regard to conflicts of law
> principles. Any lawsuit brought by you related to your access to,
> dealings with, or use of the Site must be brought in the state or
> federal courts of Tarrant County, Texas. You agree and understand
> that you will not bring against AMR Corporation, American
> Airlines, or any of its affiliated entities, agents, directors,
> employees, and/or officers any class action lawsuit related to your
> access to, dealings with, or use of the Site.

*See* Ex. 2 (Site Usage Policy).[5]

---

[5]     The site usage policy contains other terms that are relevant to this matter as well.
American reserves all rights with respect to all claims and defenses it may have under the site

7

### C.     Procedural Posture

Plaintiff filed this lawsuit in September 2016.  *See* ECF 1.  Notwithstanding his absolute and mandatory agreement to bring any lawsuit in Tarrant County Texas, Plaintiff filed suit in the U.S. District Court for the Southern District of Florida instead of in Texas.  American moved to dismiss based on (1) lack of Article III standing; (2) failure to state a claim; and (3) preemption.  *See* ECF 13.  On March 29, 2017, Magistrate Judge Goodman issued a report recommending that the district court deny the motion without prejudice.  ECF 65.  The district court adopted the recommendation on October 17, 2017.  ECF 79.

On December 8, 2017, American filed its Answer to the original complaint.  In so doing, it pleaded that "Plaintiff has agreed that the proper venue for any lawsuit arising from Plaintiff's access to, dealings with, or use of the American Airlines website or mobile application must be brought in the state or federal courts of Tarrant County, Texas, and that Texas law will govern his claims."  ECF 95 (Answer) at ¶ 106.  One week later, the parties entered into a two-month informal stay of discovery to mediate.  Plaintiff continuously represented during this time-period that he would be amending his Complaint to add new claims and possibly new parties.  ECF 132 (Reply to Mot. to Transfer) at 2-3.  Plaintiff eventually changed course on February 21, 2018 and stated that he would not be amending anytime soon.  *See id.*  American then filed a motion to transfer venue to the Northern District of Texas.  In responding to that motion, Plaintiff admitted for the first time that he had  "clicked … agreement to … the AAdvantage terms and conditions.'"  ECF 126 at 12.

That motion remained pending on September 17, 2018, when Judge Martinez issued an order directing the clerk to deny all pending motions—including American's Motion to Transfer

---

usage policy, the AAdvantage terms and conditions, and any other terms and conditions governing customers' use of American's website, the AAdvantage Program, or otherwise.

or Strike—as moot, after the parties notified the Court that they had reached agreement in principle on the financial terms of a class settlement, and were working to negotiate remaining terms, ECF 211, 212.  After settlement negotiations collapsed, American filed a motion asking the Court restore the case to its active docket.  ECF 218.  Plaintiff, however, moved to enforce the purported settlement.  ECF 219.  In May 2019, Magistrate Judge Goodman issued a report recommending that Plaintiff's motion to enforce the purported settlement be denied.  ECF 279. That recommendation was adopted by the district court on May 23, 2019, and this case was restored to the active docket.  ECF 282.

Within two weeks, American filed **the very next docket entry in this case**—advising the Court of the pendency of its Motion to Transfer Venue, affirming that it was "no longer moot and ripe for disposition by the Court."  ECF 283 (Notice of Pending Mot.) at ¶ 4.  American also requested, to the extent necessary, that the motion be restored to the docket.  *Id.*  In short, American has repeatedly and diligently raised and argued that the forum selection clause should be given effect and this case transferred to Texas.

Despite American's prompt attempt to secure a ruling on its motion, no action was taken on its motion to transfer and/or strike.  Rather, nine days later, on June 14, 2019, Plaintiff filed a motion asking the district court to order American to re-file any motion that the Court had previously denied as moot, with specific attention to American's motion to transfer.  *See* ECF 288.  In particular, Plaintiff alleged that "new facts and new law" had emerged since American filed its initial motion for transfer, such that Plaintiff desired the opportunity to file a new response to American's motion rather than have it decided on the existing papers.  *Id.* at 2.  In response, American pointed the Court (among other things) to case law demonstrating that refiling was not needed to make the underlying motion ripe for decision.  *See* ECF 297.

Before the district court took any action, Plaintiff filed an amended complaint on June 28, 2019.  Plaintiff subsequently filed a motion for class certification and American filed motions to dismiss and for summary judgment, in compliance with the district court's scheduling order. American urged the district court to resolve American's motion to transfer and/or strike before adjudicating those other motions.  ECF 374.  The district court ultimately referred all pretrial motions to Magistrate Judge Goodman.  At a status conference on November 20, 2019, Magistrate Judge Goodman required American to refile its motion.  This motion followed.

## III.    THIS ACTION SHOULD BE TRANSFERRED TO FEDERAL COURT IN TEXAS

This action should be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404 for two independent reasons.  First, Plaintiff brought this action in violation of the forum selection clause on American's website, by which Plaintiff affirmatively obligated himself to bring any claims exclusively in Tarrant County, Texas.  Under United States Supreme Court authority, that alone warrants transfer.  Second, even if there were no forum selection clause, the factors relevant to a Section 1404(a) analysis weigh strongly in favor of transfer.

Plaintiff does not deny that he agreed to the AAdvantage terms and conditions, nor that those terms and conditions contain a relevant forum selection clause.  Instead, he primarily argues that American has waived the right to enforce the forum selection clause in this action. Alternatively, he argues that the clause should not be given effect because Plaintiff allegedly did not read American's site usage policy, and because the site usage policy is set forth on a hyperlinked page from the AAdvantage terms and conditions.  None of those arguments have merit.  As such, this Court should transfer the action to the Northern District of Texas.

### A.    American's Motion To Transfer Is Neither Waived Nor Untimely

Plaintiff's primary argument is that American waived the right to seek transfer of this case, either by (a) first raising the forum selection clause in its Answer, rather than in its motion

to dismiss; (b) litigating this case while awaiting resolution of its motion to transfer; or (c) renewing its motion to transfer venue following its denial as moot by Judge Martinez only after the resolution of Plaintiff's motion to enforce the settlement.  ECF 95; ECF 283.  All of those contentions fail.

1. **Raising The Forum Selection Clause In An Answer Does Not Constitute Waiver**

First, American did not waive its right to seek a transfer of venue by raising the argument in its Answer, rather than its motion to dismiss.  "[W]hether a forum-selection clause should be enforced is a matter of contract, not an issue of proper venue." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002).  As a result, "the proper procedure for enforcing [a forum selection] clause is through a motion to transfer pursuant to § 1404 and *not* a motion to dismiss for improper venue." *SE. Consulting Grp. v. Maximus, Inc.*, 387 F. Supp. 2d 681, 684 (S.D. Miss. 2005).  Motions to transfer venue are appropriate well after a motion to dismiss is denied. *See, e.g., Clisham Mgmt., Inc. v. Am. Steel Bldg. Co., Inc.*, 792 F. Supp. 150, 160 (D. Conn. 1992) (transferring venue to Texas after discovery had been completed, based on a valid forum selection clause); *see also Sherman v. Moore*, 86 F.R.D. 471, 474 (S.D.N.Y. 1980); *Shaw v. U.S.*, 422 F. Supp. 339 (S.D.N.Y. 1976); *Sherman v. U.S.*, 246 F. Supp. 547, 548 (W.D. Mich. 1965).

Courts also consistently hold that a party does not waive its right to assert a forum selection clause by first raising a forum selection clause in its answer.  *See, e.g., Ferraro Foods v. M/V Izzet Incekara*, 2001 U.S. Dist. LEXIS 12338, at *13 (S.D.N.Y. Aug. 15, 2001) (noting courts find "no waiver" of right to enforce forum selection clause "where parties merely participated in pretrial motions [or] moved to dismiss"); *Great Am. Ins. Co. v. Nippon Yusen Kaisha*, 2013 U.S. Dist. LEXIS 67175, at *6 (N.D. Cal. May 10, 2013) ("NYK properly pleaded its defense of improper venue due to the forum selection clause in its answer."); *Meras Eng'g,*

11

*Inc. v. CH2O, Inc.*, 2013 U.S. Dist. LEXIS 5426, at \*26 (N. D. Cal. Jan. 14, 2013) ("As Defendant asserted improper venue as a defense in its answer on July 7, 2011, it did not waive the defense under Rule 12(h)."). Here, particularly given that Plaintiff's original complaint pleaded neither that he was a member of American's AAdvantage program, that he agreed to the AAdvantage terms and conditions when booking his flight, or even that he booked his flight using frequent flyer miles, *see generally* ECF 1, American was entitled in its Answer to plead facts relevant to its transfer motion and then seek transfer by a motion filed shortly thereafter.

### 2.   American's Participation In Litigation Is Not A Waiver

Plaintiff also has insinuated that American waived its right to enforce the forum selection clause by participating in litigation of this matter over the last several years. Not so. While the right to enforce a valid forum selection clause may be waived by conduct, "to constitute a waiver, other than by express agreement, there must be unequivocal acts or conduct evincing *an intent to waive*." *Woods*, 2005 U.S. Dist. LEXIS 42994 at \*7 (emphasis added). Here, American has steadfastly sought to enforce the forum selection clause in the AAdvantage terms and conditions to which Plaintiff indisputably agreed. That American's efforts never resulted in a ruling cannot be held against American. Nor can its participation in litigation pursuant to the Court's pretrial orders while its motion to transfer remained undecided.

American consistently raised Plaintiff's agreement to the forum selection clause from the outset of its first pleading in this case, two years ago. When filing its Answer in December 2017, American expressly pleaded that "Plaintiff has agreed that the proper venue for any lawsuit arising from Plaintiff's access to, dealings with, or use of the American Airlines website or mobile application must be brought in the state or federal courts of Tarrant County, Texas, and that Texas law will govern his claims." ECF 95 at ¶ 106. The very next substantive motion filed in the case, on March 15, 2018, was American's motion to transfer venue or strike Plaintiff's

class action allegations.  ECF 113.  Throughout 2018, American pressed its position, filing notices of supplemental authority in support of its arguments in the motion to transfer or strike. *See, e.g.*, ECF 160, 242.  While awaiting resolution of its motion, however, American had no choice but to litigate this case in accordance with the district court's scheduling order.

The fact that American has sought affirmative relief from this Court, including by moving to dismiss the amended complaint and moving for summary judgment also offers no basis to find waiver.  As other courts analyzing claims of waiver by conduct have explained, "[w]hen a court enters a scheduling order, a defendant has no choice but to comply with it." *Keranos, LLC v. Silicon Storage Tech., Inc.*, 2018 U.S. Dist. LEXIS 65963, at *6 (E.D. Tex. Mar. 1, 2018).  Here, American repeatedly invited the district court to resolve American's motion to transfer, and do so *prior to* resolving various other substantive motions on its docket. *See, e.g.*, ECF 283 (Notice of Pending Motion requesting district court to place American's transfer motion to the active docket); ECF 374 (Mot. for Case Management Conference) (encouraging the district court to resolve American's motion to transfer and/or strike prior to adjudicating American's motion to dismiss and summary judgment motion, as well as Plaintiff's motion for class certification).  American cannot be faulted for litigating under the existing scheduling order while its motion transfer awaited resolution.

A transfer at this stage would not be inefficient or otherwise require the district court in Texas to redo work already done in this district.  Despite the hundreds of entries on the docket, this case effectively started anew with the filing of Plaintiff's Amended Complaint three years into the litigation.  Consequently, there are numerous substantive decisions outstanding—with American's motion to dismiss and the parties' respective dispositive motions and class certification motions as yet undecided.  Those can certainly be transferred to a court located in

Tarrant County, Texas for decision.  Moreover, as discussed *infra* in Sections III.C and D, all of the pre-trial work and decision making remains to be done.  More importantly, American has a right to trial in a place convenient to its witnesses and to a jury pool in the parties' agreed forum.  For all of those reasons, that American has defended its interests in this district while awaiting resolution of its motion to transfer does not remotely amount to waiver.

3.      **American Did Not Waive By Waiting Until The Resolution Of Plaintiff's Motion For A Settlement To Renew Its Motion To Transfer**

The Court also invited American to address whether it somehow waived its right to seek a transfer of this case to the Northern District of Texas by failing to immediately renew its motion to transfer when the district court denied all pending motions as moot.  In fact, American did not waive.  It re-raised its forum selection rights quickly and unequivocally.

In response to the parties' notification to the court that they had reached agreement in principle on the financial terms of a potential settlement, the district court denied all pending motions as moot on September 17, 2018.  First, as American has previously explained, the parties still hoped to settle as of September 17, 2018.  *See* ECF 374 at 10-11 (American's Supplemental Filing in Opposition to Pltfs' Mot. to Enforce Settlement).  When settlement negotiations collapsed, American immediately proposed to restore the case to the active docket.  ECF 218.  But because *Plaintiff* moved to enforce the purported settlement, American's motion to transfer venue had to await resolution of Plaintiff's enforcement motion.  Once this Court denied Plaintiff's motion, however, American rapidly filed a notice less than two weeks later, on June 5, 2019, inviting the district court to decide American's motion to transfer and/or strike.  ECF 283.  And when Plaintiff requested an order directing that American would need to file an entirely new motion, (ECF 288), American immediately responded on June 28, 2019, by pointing to case law demonstrating, in its view, that refiling was not necessary (ECF 297).

14

American also offered to refile the motion if the Court so directed.  Of course, what was really going on between the parties was not some confusion about whether American was raising its rights or the motion was ripe for decision—it was a disagreement over whether plaintiff would get the right to rebrief the Venue Motion it had already fully briefed (as refiling would have permitted) and an attempt to further delay resolution of the venue issue.

Second, the district court's order denying pending motions as moot provided that the parties would (in event of settlement) file either a notice of dismissal or a stipulation of dismissal by October 17, 2018, or that "the Court shall <u>dismiss</u> the action without prejudice without any further warning."  The upshot of the court's order was to signal that if the parties failed to settle, the outcome would be *dismissal*, not further litigation.  Given all that, it is unreasonable to conclude that by awaiting resolution of settlement negotiations and litigation over Plaintiff's motion to enforce a settlement American engaged in "unequivocal acts or conduct evincing an intent to waive."  *Woods*, 2005 U.S. Dist. LEXIS 42994 at \*7.[6]

For all those reasons, American's motion to transfer is neither waived nor untimely.

**B.      Plaintiff's Motion To Transfer Should Be Granted**

    1.      **Legal Standard**

The Court has the power to transfer this matter pursuant to 28 U.S.C. § 1404, which permits transfer "to any other district or division where [the matter] might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  When

---

[6] As other courts have explained, the fact that American participated in settlement negotiations does not amount to a waiver of the right to enforce a valid forum selection clause following the failure of those negotiations.  Indeed, courts decline to find waiver where a defendant took far less action to advocate for transfer than American did here.  *See, e.g.*, *2215 Fifth St. Assocs., LP v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 56 (D.D.C. 2001) ("The Court disagrees with plaintiff's contention that defendant has waived any objection to improper venue based on the forum selection clause by taking part in this case and cooperating in settlement negotiations for six months without acting on its objection.").

evaluating a Section 1404(a) motion, "*a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.*"  *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quotation and citation omitted) (emphasis added).[7]  Thus, "'[o]nly under extraordinary circumstances unrelated to the convenience of the parties' should a court decline to enforce a forum-selection clause." *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016) (quoting *Atl. Marine*); *see also Coffee Bean Trading-Roasting, Ltd. Liab. Co. v. Coffee Holding, Inc.*, 510 F. Supp. 2d 1075, 1077 (S.D. Fla. 2007) (Martinez, J.).  "The party seeking to avoid the forum selection clause bears the burden of showing exceptional circumstances, predicated on public interest considerations to justify disturbing the forum selection clause."  *McArthur v. Kerzner Int'l Bahamas Ltd.*, 607 F. App'x 845, 847 (11th Cir. 2015).

    In the absence of a forum selection clause, courts consider additional factors: including the plaintiff's initial choice of forum, the convenience of the parties and the witnesses, access to sources of proof, the availability of process to compel the attendance of unwilling witnesses, the location of relevant documents, the relative means of the parties, and all other practical problems that make trial of the case easy, expeditious, and inexpensive, such as choice of law issues.  *See Retterath v. Homeland Energy Sols., LLC*, 2014 U.S. Dist. LEXIS 57259, at *22-23 (S.D. Fla. Feb. 20, 2014).  Courts in either case should also be attentive to public interest considerations—

---

[7] In *Atlantic Marine*, the Supreme Court explained that a valid forum selection clause requires a court to alter its analysis in three ways:  (1) the burden shifts to the plaintiff to show that a forum selection clause is unenforceable; (2) a court may not consider arguments about the parties' private interests because when parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient, or for their pursuit of the litigation; and (3) when a party bound by a forum selection clause files suit in a different forum, a transfer of venue will not carry with it the original venue's choice-of-law rules because not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship.  *See* 571 U.S. at 63-64.

including "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)). "[T]hose factors will 'rarely defeat a transfer motion.'" *Id.* (quoting *Piper*, 454 U.S. at 582).

"[A] plaintiff's choice of forum is afforded less weight if the plaintiff resides outside the forum due to the difficulty plaintiff will have in showing why the original forum is more convenient." *See Rigby v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 2006 U.S. Dist. LEXIS 28183, at *16 (M.D. Ga. May 11, 2006). Here, Plaintiff lives in Sarasota, outside the boundaries of the Southern District of Florida. The plaintiff's choice of forum is also afforded less weight in class actions. *See Moghaddam v. Dunkin' Donuts, Inc.*, 2002 U.S. Dist. LEXIS 14952, at *6 (S.D. Fla. Aug. 13, 2002).[8] Further, "a plaintiff's choice of forum will be afforded less deference when the operative facts underlying the action occurred outside the district chosen by the plaintiff." *Id.* at *7. "The convenience of witnesses, however, is a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)." *Id.* at *8 (internal quotation and citation omitted).

> 2.     **The Parties' Agreed-To Forum Selection Clause Requires Transfer**

American's site usage policy expressly specifies that "[a]ny lawsuit brought by you related to your access to, dealings with, or use of the Site ***must*** be brought in the state or federal courts of Tarrant County, Texas." ECF 117-1 Ex. 2 (Site Usage Policy, emphasis added).

---

[8] "'Where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.'" *Id.* (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

Plaintiff accepted that policy when he voluntarily and affirmatively agreed to the AAdvantage

terms and conditions when signing into his AAdvantage account to book the award travel at

issue in this case.  And, given that Plaintiff's claims concern the content of the information

displayed on American's website, his claims necessarily fall well within the scope of the forum

selection clause.  The Court therefore should enforce Plaintiff's agreement to the AAdvantage

terms and conditions by transferring this case to the Northern District of Texas. [9]

There is no dispute that Plaintiff "clicked … agreement to … the AAdvantage terms and

conditions."  ECF 126 (Opp. to Mot. to Transfer Venue) at 12; *see* ECF 420-1 (Plaintiff's Draft

Report & Recommendation on Class Certification) at 30  ("Plaintiff did click something and was

told that the click manifested an acceptance of certain terms and conditions.").  Given Plaintiff's

professional background, it is beyond question that he was aware of the consequences of

agreeing to a website's terms and conditions.  Plaintiff, after all, is a self-proclaimed "IT guy"—

with nearly two decades of professional experience as a software developer and computer

programmer, including experience developing websites and web applications.  Ex. A (Zamber

Depo. Tr.) at 60:14-21; 81:19-20.  And he could not identify a *single* reason at his deposition

why he would not be bound by those terms and conditions.  *Id.* at 152:20-25.  While this

provision would be binding on any individual, the fact that Plaintiff is tech savvy makes his

argument particularly specious.  *See In re: Daily Fantasy Sports Litig*., 2019 U.S. LEXIS 206689

at *54 n.6 (noting that it is "highly implausible" that individuals who were "not ingenues when it

comes to the internet" would not have been notice that clicking "Play Now" next to text about

terms and conditions amounted to consent to those terms).

---

[9] Transfer to Texas would be proper even if Plaintiff had not consented to the forum selection
clause because American's principal place of business is in Texas and, therefore, this matter
"might have been brought" in that district.  28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1404(a).

"Federal courts have consistently enforced clauses contained in clickwrap agreements like the one at issue here, where the agreement is 'presented via a hyperlink to a page separate from the one containing the box or button manifesting assent.'" *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1190-91 (D.N.M. Mar. 28, 2018) (quoting *Bassett v. Elec. Arts Inc*., 2015 U.S. Dist. LEXIS 36175 (E.D.N.Y. Feb. 9, 2015)); *see also Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d at 1303 (M.D. Fla. 2018) ("Courts have enforced 'hybrid' browsewrap agreements[10]— that is, browsewrap agreements that resemble clickwrap agreements in that they require the user 'to affirmatively acknowledge the agreement before proceeding with use of the website.'"). *Temple* is almost directly on point.  There, a party encountered language stating that "[b]y clicking 'Get A Quote'" you are accepting our Privacy Policy and Terms and Conditions."  The underlined terms were hyperlinked to a policy.  *Temple* held that the user's affirmative consent combined with the conspicuously available hyperlinks were sufficient to require enforcement of the hyperlinked policy.  Those are effectively identical to the circumstances here.

The same result followed in *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829 (S.D.N.Y. 2012).  There, to sign up to become a facebook member, an individual clicked a "Sign Up" button next to which appears "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," with a hyperlink to those terms.  *Id.* at 835.  After discussing the differences between browsewrap, clickwrap, and the hybrid agreement before it, the court concluded that by pressing "Sign Up," the user had "assented to the Terms of Use and therefore to the forum selection clause therein."  *Id.* at 841.

Here, American's website is identical to the situations at issue in *Temple* and *Fteja*.  At the log-in screen where Plaintiff logged into his AAdvantage account, he encountered language

---

[10] Different courts use different terminology (clickwrap vs. hybrid browsewrap/clickwrap), but *Davis*, *Temple*, and *Fteja* all refer to the same kind of agreement at issue here.

displayed directly above the Log In button that stated: "By logging in, I accept the AAdvantage terms and conditions and privacy policy." ECF 117-1 at ¶ 2. The "terms and conditions" were displayed in blue text to indicate the existence of a hyperlink setting forth those terms on a separate page. *Id.* The same result as occurred in *Temple* and *Fteja* should follow.

Indeed, Plaintiff's own recent filings affirm that Plaintiff's agreement to the AAdvantage terms and conditions is enforceable. As he explained in his recently filed proposed report & recommendation in support of class certification, a paradigmatic (enforceable) hybrid clickwrap case is presented where (1) "the hyperlink to the terms and conditions that the user is assenting to via her click is on the same screen as the button she must click" (2) "is conspicuous on that screen", and (3) "appears alongside a notice that clicking the button is an acceptance to the specifically-referenced and hyperlinked terms and conditions." ECF 420-1 at 28. As just explained, however, all three things are true here. The hyperlink to the AAdvantage terms and conditions is conspicuously presented directly above the button that a customer must click, above which appears notice that clicking the button amounts to acceptance of the AAdvantage terms and conditions. *Even Plaintiff* concedes that "Plaintiff was told that, by clicking a log-in button, he was assenting to the AAdvantage terms and conditions." *Id.* at 29.

Plaintiff's only argument against the enforceability of the forum selection clause is that the site usage policy in which it appears is not set forth on the webpage setting forth the AAdvantage terms and conditions, but rather on a second page hyperlinked from the other AAdvantage terms and conditions. That is wholly unpersuasive. To begin with, Plaintiff essentially concedes that he assented to all those terms and conditions that appeared on the page directly hyperlinked from the AAdvantage Log-in screen. But one of those terms and conditions expressly stated that "[b]y accessing your AAdvantage account on AA.com, *you agree to the*

*AA.com site usage policy*."  ECF 117-1 Ex. A (emphasis added).  In other words, Plaintiff's

agreement to the site usage policy wasn't buried dozens of hyperlinks deep—it was contained on

the very page hyperlinked from the Log-In screen, the very page setting forth terms that Plaintiff

himself admits are ordinarily held enforceable in cases like this one.  In any event, the terms of

the site usage policy to which Plaintiff agreed were not buried—rather they were one-click away,

via a highlighted and prominently displayed hyperlink.  *See id.*[11]  As another federal court

recently held, "on the cusp of the third decade of the twenty-first century it can fairly be said that

following a hyperlink is like turning a page in a printed document. Any reasonable viewer would

realize that access to the text of the terms would be simple and immediate."  *In re: Daily Fantasy

Sports Litig.*, 2019 U.S. LEXIS 206689 at *53.

   Notably, the AAdvantage terms and conditions specify on the *initial* page hyperlinked

from the log-in screen that "[t]he AAdvantage program Terms and Conditions are governed by

and to be interpreted in accordance with the laws of the State of Texas."  ECF-117-1 Ex. A at 6.

There is no real debate, therefore, that Texas law applies for purposes of determining whether the

site usage policy would be considered enforceable.  As other federal courts considering the

enforceability of clickwrap agreements under Texas law have explained, under Texas law, "[a]

party who signs a document is presumed to know its contents."  *Klebba v. Netgear, Inc.*, 2019

U.S. Dist. LEXIS 17833, at *9 (W.D. Tex. Feb. 5, 2019) (quoting *In re Intern. Profit Assoc.,

Inc.*, 286 S.W.3d 921, 923 (Tex. 2009)).  "Accordingly, 'parties to a contract have an obligation

---

[11] If one credited Plaintiff's argument that the "site usage policy" is unenforceable because it
requires "flipping the page" to review, it would render unenforceable a host of ordinary
contractual terms that govern an individual's use of American's website, including copyright
provisions, limitation's on an individual's ability to transmit the content of American's website
for commercial use, and limitations on a passenger's ability to use the website to make a
"fictitious, fraudulent, or abusive reservation."  ECF 117-1 at Ex. B.  Such results would make
little sense, particularly if the consequence would be to force American to list all of the terms and
conditions on one lengthy scrollable page, even if less organized than its current presentation.

to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation.'" *Id.* (quoting *In re Intern. Profit Assoc., Inc.*, 286 S.W.3d at 924). "These same rules 'appl[y] to contracts which appear in an electronic format.'" *Id.* (quoting *Barnett v. Network Sols., Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied)).

When a party is "informed of the consequences of his assenting click and [is] shown, immediately below, where to click to understand those consequences," the terms are binding. *Fteja*, 841 F. Supp. 2d at 839-40. "The situation might be compared to one in which [a business] maintains a roadside fruit stand displaying bins of apples" with "signs that say '[b]y picking up this apple, you consent to the terms of sales by this fruit stand. For those terms, turn over this stand." *Id.* (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004)). "[T]he consumer is prompted to examine terms of sale that are located somewhere else. Whether or not the consumer bothers to look is irrelevant." *Id.* "In those circumstances, courts have not hesitated in applying the terms against the purchaser." *Id.*[12]

Whether or not Plaintiff actually opened and read the "terms and conditions" link or site usage policy, he had—at a minimum—constructive notice of these terms by repeatedly logging into his account and professing his agreement to the AAdvantage terms and conditions. That is enough to make the agreement enforceable. *See Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("The Plaintiffs' admitted failure to read the Participation Agreement does not excuse compliance with its terms"); *Nguyen v. Barnes & Noble Inc.*, 763

---

[12] It would be particularly odd to hold the site usage policy unenforceable because it is presented on a second page so it can be read more easily and clearly. Such a ruling would counterintuitively penalize companies that try to make their terms and conditions more accessible and understandable by organizing them into buckets that reviewable one at a time, rather than presented in one mammoth list on a single page, presumably in smaller font to fit.

F.3d 1171, 1177 (9th Cir. 2014) ("[W]here the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements.").

Plaintiff's own complaint underscores his constructive notice of those terms and conditions.  In particular, the Complaint attaches several portions of American's website, including the "FAQs" and the "Trip insurance" information webpage.  *See* ECF 296 at ¶ 38 and Ex. 9.  These two separate webpages are accessible via hyperlink and are located in the same area where the link to the "Legal, privacy, copyright" hyperlink is provided, which also contains the site usage policy:



*See* ECF 1 at Ex. 2 (highlighting added).  It is disingenuous for Plaintiff to claim that the forum clause is unenforceable because he did not actually view those "Legal, privacy, copyright" terms—having viewed and relied on information contained in other links in the same area, he had constructive notice of the dispositive terms here.  The forum selection clause is enforceable.

### 3.    The Section 1404(a) Factors Also Weigh in Favor of Transfer

While the forum selection clause is ground alone to transfer this matter, other Section 1404 factors likewise support transferring this case to the Northern District of Texas.

Witness Convenience.  Witness convenience weighs strongly in favor of a venue transfer. Not a single witness—not even Plaintiff—resides within this district.  Ex. A (Zamber Depo. Tr.) at 32:1-4.  Indeed, it is only Plaintiff's counsel who maintains an office here.  During discovery,

witnesses were deposed where they resided.  But to try this case in the Southern District of
Florida will present substantial burdens on those American employees that might be called as
witnesses; all of whom work and reside in Texas, not Florida.  Likewise, none of the employees
of Allianz involved with the travel policies at issue are located in Florida.  The only Florida
witness subpoenaed is the Florida Office of Insurance Regulation, which is located in
Tallahassee, and thus cannot be compelled to appear for trial under Rule 45 because the travel
distance is more than 100 miles.[13]  Nor will this witness even be relevant given that Texas law
applies to Plaintiff's common law claims.  This factor favors a transfer.

     Party Convenience.  The Northern District of Texas is far more convenient for American,
given that its offices, the employees who will be required to participate in this matter, and its
documents are located in Fort Worth.  Although this district may be marginally more convenient
for Plaintiff, who lives in Sarasota, it is still at least a 3.5-hour drive to the courthouse in Miami.
It would not be a significantly longer trip for Plaintiff to fly to Dallas-Fort Worth instead; he also
has family in the area.  Ex. A (Zamber Depo. Tr.) at 35:15-24.  Nor would it be significantly
more expensive for Plaintiff to litigate in Texas, as he has not attended a single hearing in the
case, nor any of the depositions except his own.  In any event, the Court should not afford any
deference to Plaintiff's choice of forum given that this is a class action: "'the residence of a class
representative is often a mere happenstance, which may be discounted by a court when weighing
transfer factors.'"  *Stillwater Min. Co. Sec. Litig.*, 2003 U.S. Dist. LEXIS 7983, at *10-11
(S.D.N.Y. May 12, 2003) (citation omitted).

     Sources of Evidence, Location of Documents, and Locus of Operative Facts.  To
American's knowledge, no evidence in this case, nor a single relevant document, is located in

---

[13] Moreover, Plaintiff faces significant challenges regarding the admissibility of that testimony.

24

this district.  At this time, the known sources of evidence and documents are located either in Texas (at American) or in Virginia (at Allianz).  Nor would Plaintiff's documents change the analysis.  Given the nature of the claims, which depend entirely on information from American and Allianz, Plaintiff unsurprisingly has very few documents.  In fact, his production consisted of 51 pages—mostly from American's website and policy-related documents from Allianz.

In terms of Plaintiff's ability to compel witnesses to attend trial, the Northern District of Texas is a far better forum for Plaintiff.  Because not a single witness is located in this district, Plaintiff cannot compel attendance at trial of American employees under Rule 45(c)(1); if this case were transferred to Texas, he could do so.  Likewise, the operative facts (*i.e.*, the Allianz-American agreement, the decisions regarding the formatting and content of American's website, the communications between American and Allianz, and the operation of Allianz's dialogue box) occurred either in Texas (at American) or in Virginia (at Allianz).

Choice of Law.  As noted above, American's site usage policy not only contains a forum selection clause but also a governing law clause specifying that Texas law applies to Plaintiff's common law claims.  The AAdvantage terms and conditions are also governed by Texas law.

Thus, not only should the forum selection clause be "given controlling weight in all but the most exceptional cases," *Atl. Marine*, 571 U.S. at 63 (quotation and citation omitted)—and there are no exceptional circumstances—but Section 1404 factors favor a transfer as well.

## IV.    CONCLUSION

For the reasons set forth above, this matter should be transferred to the Northern District of Texas.

Dated:  December 5, 2019

Respectfully submitted,

/s/ Humberto H. Ocariz
Humberto H. Ocariz
hocariz@shb.com
Florida Bar No.: 740860
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.5171
Facsimile: 305.358.7470

and

James E. Brandt (*Pro Hac Vice*)
james.brandt@lw.com
Elizabeth (Betsy) Marks (*Pro Hac Vice*)
betsy.marks@lw.com
**LATHAM & WATKINS, LLP**
885 Third Avenue
New York, New York 10022-4834
Telephone: 212.906.1200
Facsimile: 212.751.4864

*Attorneys for American Airlines, Inc.*